KERNS WRIGHT AND MARGARET A. WRIGHT, PETITIONERS, *v.* COMMIS-SIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 67973. Filed March 31, 1959.

*Kerns Wright, Esq., pro se.*
*Maurice B. Townsend, Jr., Esq.,* for the respondent.

DRENNEN, *Judge:* Respondent determined a deficiency in petitioners' income tax for the calendar year 1954 of $2,914.28. The sole issue is whether the amount of $6,487.98 expended by petitioners for a trip around the world and subsequent attempts to publish a book about this trip should be allowed as a business deduction under section 162(a) of the Internal Revenue Code of 1954.

### FINDINGS OF FACT.

Petitioners Kerns and Margaret Wright, hereinafter referred to as Kerns and Margaret, are and were during the year 1954 husband and wife and resided at Van Wert, Ohio. They filed joint income tax returns for the calendar year 1954 on a cash basis with the district director of internal revenue at Toledo, Ohio.

During approximately one-half of the year 1954 and for many years prior thereto, Kerns maintained his own law practice in Van Wert, Ohio, and in the year 1954 his net income from his law practice was $25,722.43.

Neither petitioner was an author by profession although Kerns, approximately 10 years earlier, had successfully written and had published a book on Ohio's real property law, entitled "Wright's Ohio Titles." Since that time Kerns has also considered writing on the "domineering influence in labor unions," but this along with another idea concerning a historical novel on northwest Ohio, never materialized.

In the fall of 1953, petitioners' son, while stationed with the Armed Forces in Japan, married a Japanese girl. A trip to Japan to visit their son and new daughter-in-law was discussed. Kerns realized that from Japan it would be just about as easy to go on around the world to get back to Ohio as it would be to return over the same route by which they reached Japan. From this discussion also arose the idea of writing a book about a trip around the world. The book was to be written in the form of a daily diary recording

the reactions of an average American woman to places and events during such a trip. Kerns consulted an author's agent in New York and a travel agent in Chicago, both of whom gave advice as to how such a book should be written and concerning the possibilities of publication. As a result of these consultations petitioners decided to write "Margaret's Diary" with the intent of selling it for a profit either by publication as a book or by sale to a newspaper syndicate as a serialized article. However, prior to the trip, petitioners had not obtained any commitments as to the book's publication or syndication in newspapers.

On February 22, 1954, after closing Kerns' law office, obtaining passports, and receiving normal medical innoculations, petitioners commenced their trip around the world. From Van Wert they traveled to Los Angeles, Hawaii, Japan, Hong Kong, Thailand, Malaya, Singapore, India, Darjeeling, Bangkok, Benares, Karachi, Cairo, Lebanon, Istanbul, Greece, Rome, Switzerland, France, and England, stopping several days in each place. On this 3-months' trip petitioners spent 4 days visiting with their son and his new bride in Japan. Among other events during this visit they traveled to the village of their daughter-in-law's parents and ate dinner at their house.

In gathering information for their book the petitioners used the following procedure during most of the trip. After arrival in a city, the petitioners would spend their day sightseeing and taking tours to the various points of interest the city had to offer. As Margaret made observations and stated her reactions to different things that happened, Kerns noted these reactions on a pad he carried for that purpose. Following dinner Kerns would usually make a preliminary draft of what had occurred during the day. Margaret would then usually rewrite, revamp, and recheck this draft. Petitioners would normally continue in this manner 3 or 4 days at a time and then rest a day.

After their return on May 26, 1954, and except for a few days Kerns spent in his law office, petitioners devoted the majority of their time, until September 7 or 8, 1954, preparing a manuscript of their trip. The final manuscript was 428 pages long and was written in the first tense relating to Margaret's experiences each day during the trip.

Following the manuscript's completion, the petitioners attempted unsuccessfully to have it published. From October 8, 1954, to the latter part of February 1955, petitioners submitted the manuscript to six reputable publishers, all of whom rejected it. Since then no further attempts have been made to sell the manuscript. Kerns returned to his law practice about September 7 or 8, 1954. Neither

petitioner has made any effort to write anything for publication since that time.

Petitioners incurred and paid expenses of $6,497.98 [1] in connection with their trip around the world and subsequent attempts to have the manuscript published. Petitioners deducted these expenses, itemized as "Book-published," from the earnings of Kerns' law office reported on their 1954 income tax return. Writing the book had no connection with Kerns' law practice.

Respondent in his deficiency determination disallowed the entire $6,513.02 [1] on the ground that it did not constitute an allowable deduction under section 162(a) or any other section of the Internal Revenue Code of 1954.

Petitioners took the trip around the world for the multiple purpose of seeing their son, their new daughter-in-law and her family, for their own personal interest and enjoyment, and for obtaining facts and experiences which would form the basis for a book which they hoped and intended to have published for a profit.

### OPINION.

Petitioners' only contention is that they entered into this new venture of writing and attempting to sell a book in good faith for the purpose of making a profit and in the belief that a profit could be realized thereon, and that such a venture therefore constituted a trade or business under section 162(a) of the Internal Revenue Code of 1954 [2] and the expenses of the trip and writing the book are deductible as ordinary and necessary expenses of that business.

The only evidence presented was the testimony of the petitioner, Kerns Wright, and documentary evidence introduced by him consisting of miscellaneous samplings of the original notes made by petitioners during the trip, a typewritten copy of the completed manuscript, and correspondence with several publishing companies with reference to petitioners' unsuccessful efforts to have the book published. Respondent conceded at the trial that the amount claimed on the return, with the exception of $25 heretofore mentioned in footnote 1, *supra*, was the actual amount of petitioners' expenditures in connection with the trip and preparing the manuscript for publication.

On this evidence we believe the petitioners in fact entered into this venture with the hope and intent of making a profit from the sale of

---

[1] Due to a mathematical error, conceded by petitioner at the trial, the actual amount claimed on the return and disallowed was $6,513.02.

[2] SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

the book. It is obvious from reading the manuscript that a great deal of time, thought, and effort were put into producing it and we do not doubt that petitioners expended this effort in the hope and expectation that the book would sell. But we are not convinced that the trip would have been made for the sole objective of making a profit on the sale of the book. We think petitioners were also motivated by a desire to see their son, his new wife, and her family, and a desire to travel and see the many interesting places where they stopped, and that the trip actually served the joint purpose of satisfying these desires and gathering material for the book.

On the facts presented, we do not think the petitioners' efforts in writing and attempting to have published "Margaret's Diary" constituted a trade or business within the meaning of section 162(a) of the 1954 Code, and therefore none of the expenses claimed are deductible by petitioners in the year 1954 as ordinary and necessary expenses paid or incurred in carrying on a trade or business.

Business has been defined as including "that which occupies the time, attention, and labor of men for the purpose of livelihood or profit." *Flint* v. *Stone Tracy Co.*, 220 U.S. 107, 171. But it is recognized that whether an occupation constitutes a trade or business must be decided on the facts in each case, *Frederick A. Purdy*, 12 T.C. 888, and the intent of the taxpayer has a material bearing on the issue, *Morton* v. *Commissioner*, 174 F. 2d 302, certiorari denied 338 U.S. 828, although it is not conclusive. While profits and losses are factors to be considered in determining whether a taxpayer's intention is to engage in a business for a livelihood or profit, *Thatcher* v. *Lowe*, 288 F. 994, the fact that the activity is conducted at a loss does not itself preclude its being considered a business. *Doggett* v. *Burnet*, 65 F. 2d 191. And it is clear that a person may be engaged in more than one trade or business, and writing need not be the sole activity of the taxpayer to qualify as a trade or business. *Kavanagh* v. *Evans*, 188 F. 2d 234; *Eugene H. Walet, Jr.*, 31 T.C. 461.

But we do believe there must be some conscientious intent and effort to engage in and continue in the writing field for the purpose of producing income and a livelihood in order to have writing qualify as a trade or business within the meaning of section 162(a) of the Code. If carrying on a trade or business were interpreted to mean simply engaging in any venture with the hope of making a profit, the deduction allowed by section 162(a) would be broader than intended. Some continuous or repeated activity in the literary field, coupled with a reasonable expectation of making a profit, would be more convincing of an intent to engage in writing as a business or profession, than does the isolated effort made by these taxpayers, even though it may have been with the hope of making a profit. See *Fahs* v. *Craw-*

*ford*, 161 F. 2d 315, wherein it is said: "Carrying on a business, however, implies an occupational undertaking to which one habitually devotes time, attention, or effort with substantial regularity."

In our opinion the writing of one book based on their experiences on a trip around the world which they undertook in part at least for other reasons, by two people with little or no experience in writing a travelogue of this sort and with no prior commitments from publishers that the book would ever be published, and with no indicated intention of writing anything else for publication, does not constitute a trade or business within the purview of section 162(a) of the Code, even though the writers hoped and intended that the book would be published and a profit derived from the sale thereof. We think there must either have been some prior activity on the part of the taxpayers in this field of endeavor or there must be an intention to devote at least a part of their time and efforts in the future to writing, coupled with the hope or expectation of making a livelihood or profit from such efforts, to qualify the activity as a trade or business under the Code provisions.

This was petitioners' only effort to publish a book, except for a book on Ohio property law written by Kerns 10 or more years ago. Kerns had a successful law practice to which he devoted his full time prior to making this trip and to which he returned after the manuscript was completed. There is no evidence that either petitioner made any further efforts in the field of literature subsequent to 1954.

Petitioners rely principally on *Doggett* v. *Burnet, supra*, reversing *Hugenia S. Doggett*, 23 B.T.A. 744, in support of their position. We interpret that case as support for the principle that an activity need not be conducted at a profit to be considered a trade or business, but it does not hold that every activity engaged in with the hope and expectation of making a profit constitutes a trade or business. In fact, the *Doggett* case and other cases decided by this and other courts which have allowed deduction of expenses emphasize the requirement that there must be some continuity of enterprise to constitute a trade or business.

The cost of a trip such as this, undertaken by petitioners for purely personal reasons, cannot be turned into and deducted as a business expense merely by writing a diary en route with a mere hope (unjustified) that it might be published and bring in some income. To allow the deduction of such expenditures to two people who have never been engaged in the business of writing and have no intention of attempting to earn a livelihood in the future in such business would be an invitation to many taxpayers to convert pleasure trips into business trips at the expense of the revenue.

In our opinion the evidence does not show that any of the expenditures here involved were ordinary and necessary expenses in carrying

on a trade or business in which petitioners were engaged and none of them are deductible under section 162(a) of the Code.

While neither party mentions it on brief, we have given consideration to the possible effect on this issue of the 1950 amendment of section 117(a) of the 1939 Code (identical with section 1221(3) of the 1954 Code). See sec. 210, Rev. Act of 1950, and committee reports thereon. We do not feel that the amendment requires a different conclusion in this case.

*Decision will be entered for the respondent.*