Thelma C. Whitman v. Commissioner.
Whitman v. Commissioner
Docket No. 64772.
United States Tax Court
T.C. Memo 1960-88; 1960 Tax Ct. Memo LEXIS 202; 19 T.C.M. (CCH) 456; T.C.M. (RIA) 60088; May 6, 1960
*202 Held: Petitioner was not engaged in the business of writing a book but was engaged in the business of illustrating in the year 1951. Deductible expenses of the business determined. Richard B. Jablow, Esq., 400 Madison Avenue, New York, N. Y., for the petitioner. William F. Chapman, Esq., for the respondent. DRENNEN
Memorandum Findings of Fact and Opinion DRENNEN, Judge: Respondent determined a deficiency in petitioner's income tax for the year 1951 in the amount of $2,248.92. The deficiency is due to the disallowance of business expenses in the amount of $5,154.70. The issues for decision are: (1) Whether petitioner was engaged in the trade or business of writing or illustrating in the year 1951; and (2) if found to be so engaged, whether petitioner is entitled to *203 deduct certain expenditures as business expenses. Findings of Fact During the year 1951, petitioner resided at 455 East 57th Street, New York City, and filed an individual income tax return for 1951 with the district director of internal revenue for the second district of New York. During the years 1914 through 1918, petitioner was actively engaged as a freelance illustrator for such periodicals as the Saturday Evening Post, Harpers, Century, McClures, Vanity Fair, and other magazines. In 1918, petitioner married Edward P. Grosvenor, a New York attorney, and because of her marriage, petitioner's activities as an illustrator gradually ceased. After the death of Grosvenor in 1929, petitioner resumed her work as an illustrator. Two exhibitions of petitioner's oil paintings were held in New York City during the years following her husband's death. In 1932, petitioner married Charles S. Whitman, a former governor of New York State. Whitman had also been district attorney for New York City and, in addition to being prominent professionally, was well known in New York and Newport society. Widowed once again by the death of Whitman in 1947 or 1948, petitioner decided that since *204 she had been married to two widely-known attorneys and had had an active social life, a motion picture based upon her life's story would command public interest. Thereupon petitioner discussed the possibilities for the sale of such a story with executives of the motion picture industry, who advised her that if a book were written first, a motion picture sale of such a book would be a possibility. Petitioner then contacted Brandt & Brandt, a literary agency. The agency suggested that she should write the book and agreed to act as agent for its sale. Thus, sometime in 1947, 1948 or 1949, petitioner undertook the writing of a manuscript which was entitled "Because It Was Our Course" or "October's Child." The manuscript was rejected by the Macmillan Company on June 19, 1950, and was never subsequently accepted by any other publisher. This was petitioner's only attempt to write and publish a book. During the years following Whitman's death, petitioner again resumed her illustrating activities. At the suggestion of her literary agent she prepared illustrations to accompany suggested themes for children's books. None of this material was ever completed, submitted or sold. Petitioner had *205 a nervous breakdown in 1952, after which she entered a convent and has made no further efforts to illustrate professionally. The following table is a breakdown of expenditures and the portion thereof claimed as business expense by petitioner for the year 1951: Expense
Business
Personal
Total
Rent
$1,494.02
$1,081.00
$2,575.02
Telephone
130.12
130.12
260.24
(Answering Service)
169.70
(1)
169.70
Cleaning - Maid Service
470.42
470.42
940.84
(Window Cleaning)
27.61
27.61
55.22
Electricity
38.21
19.42
57.63
Office Supplies
151.36
(1)
151.36
Office Equipment
12.50
(1)
12.50
Entertainment
1,066.47
459.19
1,525.66
Traveling
732.38
(1)
732.38
Miscellaneous
859.91
1,491.50
2,351.41
(1) None. Approximately 60 per cent of the rent paid by petitioner for her apartment was charged off as business expense. Her apartment consisted of three rooms. One room was used for her writing activities; the bedroom, which had a northern light, was used for painting; and the third room was used for social purposes. Petitioner allocated two-thirds of her entertainment costs to business expense. These costs were largely incurred at the *206 Colony Club of New York to which she had belonged for many years. Traveling expenses were deducted as business expense on the ground that petitioner needed to visit places where she had lived previously in order to obtain the necessary background and atmosphere for her book. Opinion We are somewhat hampered in this case because of the vagueness and uncertainty of petitioner's testimony, particularly as to dates, which, however unfortunate, is understandable in view of the lapse of time and the fact that petitioner had a nervous breakdown in 1952 and has lived a rather secluded life since that time. "Business has been defined as including 'that which occupies the time, attention, and labor of men for the purpose of livelihood or profit.' Flint v. Stone Tracy Co., 220 U.S. 107, 171. But it is recognized that whether an occupation constitutes a trade or business must be decided on the facts in each case, Frederick A. Purdy, 12 T.C. 888, and the intent of the taxpayer has a material bearing on the issue, Morton v. Commissioner, 174 F. 2d 302, certiorari denied 338 U.S. 828, although it is not conclusive. While profits and losses *207 are factors to be considered in determining whether a taxpayer's intention is to engage in a business for a livelihood or profit, Thatcher v. Lowe, 288 F. 994, the fact that the activity is conducted at a loss does not itself preclude its being considered a business. * * * [Kerns Wright, 31 T.C. 1264, affirmed per curiam 274 F. 2d 883 (C.A. 6]" While we are doubtful that petitioner's one venture into the literary field in writing her memoirs under the circumstances present would qualify as a trade or business under the tests mentioned above, we do not have to answer that question directly. The evidence indicates that the manuscript of petitioner's book was completed and rejected by at least one publisher by the middle of the year 1950, and there is no proof that any of the expenses claimed as business expenses by petitioner for the year 1951 were ordinary and necessary expenses of, or in any way related to, any continuing effort on the part of petitioner to write and publish her book in the year 1951. On the other hand, we are satisfied from the evidence that petitioner was engaged in illustrating for children's books during the year 1951 *208 and that such activity was conducted with the reasonable hope and expectation of making a profit therefrom. Petitioner testified that her literary agent suggested that she write and illustrate children's stories and that such illustrating was done after she had about completed the book and up until the time she went into a convent in 1952. This would indicate that at least a part of the illustrating was done in 1951, and petitioner testified rather definitely that it was. Petitioner had been quite successful as an illustrator prior to her first marriage in 1914-1918, and after a considerable lapse of time was again successful in this field in the period between her two marriages. This, coupled with the fact that she still had connections in this field and had been known as an illustrator (she had been listed as an illustrator in "Who's Who in American Art") gave her some reason for thinking that she could again earn income as an illustrator, and supports her claim that she undertook this work as a business venture with intent to make a profit. The fact that she did not complete or sell any of the illustrations before she had a breakdown, while a factor to be considered, would not *209 alone require a contrary conclusion. Petitioner testified that she needed the money and that that was one of the principal reasons for her return to illustrating. Considering all the evidence before us, including the manuscript of petitioner's book and samples of her illustrating, we are of the opinion and so find that petitioner was not engaged in the business of writing but was engaged in the business of illustrating for a profit in 1951. The question then is: What portion, if any, of her claimed expenses is deductible under section 23(a), I.R.C. 1939, as ordinary and necessary expenses incurred or paid in carrying on petitioner's business of illustrating? Petitioner testified that when it came time to prepare her income tax return she gave her checkstubs and canceled checks, with notations thereon as to what some of the checks were for, to her secretary, who listed the expenditures by month in various categories, such as rent, telephone, supplies, etc., allocated these expenditures between business and personal, and then delivered these lists, checkstubs and canceled checks to an officer of the bank which handled petitioner's affairs, who in turn prepared her tax return from *210 this information and occasional questions asked of her. Neither the banker nor the secretary was available as a witness, and the only evidence we have are the lists prepared by the secretary for the year 1951, the canceled checks supporting the amounts appearing on these lists, bank statements showing payment of petitioner's rent, and petitioner's testimony that the expenses claimed on her return were incurred in her business and that in her opinion the lists prepared by her secretary accurately reflected the information contained on her checkstubs and canceled checks. The canceled checks and the allocation thereof between business and personal expenses on the lists prepared by the secretary do tie in with the amounts claimed as business expense on petitioner's return. While this is not the most satisfactory evidence from which to determine this issue, we do believe that petitioner incurred some of the claimed expenses in connection with the illustrating business and, based on what evidence we have and in accord with the rule announced in Cohan v. Commissioner, 39 F. 2d 540, we find the following to be deductible as ordinary and necessary expenses of petitioner's business: *211 [1]
1. Rental - Petitioner testified that one of the three rooms in her apartment was a studio-bedroom, and one was used as an office, principally for typing, however. One-third of the total rent paid is deductible, or $858. 2. Telephone and telanserphone - One-third of the total paid is deductible, or $145. 3. Electric service - One-third of the total paid is deductible, or $23. 4. Cleaning - maid service and window cleaning - One-third of the total paid is deductible, or $331. 5. The entire amount of supplies and office equipment claimed in the amount of $151.50 and $12.50, respectively, is deductible. 6. Entertainment - Most of these expenditures were for Colony Club dues and charges. There is little direct evidence that petitioner entertained in connection with her illustrating work. However, she did indicate that she entertained some business acquaintances. Approximately 5 per cent of the total expenditures for entertainment is deductible, or $75. 7. Hotel and travel expenses - While petitioner testified that she traveled to get background *212 material for her book, there is no evidence that she traveled in connection with her illustrating. Consequently, no amount is deductible for hotel and travel expense. 8. Miscellaneous expense - Of the miscellaneous expenses claimed, we find that $200 representing cash expenditures, legal services and miscellaneous furnishings and repairs is also deductible. The total expenditures deductible are thus $1,796. Decision will be entered under Rule 50. Footnotes
1. (There are small discrepancies between the total of the checks and the totals on the lists. We have used round figures.)↩