Charles A. Dun Leavay v. Commissioner.
Leavay v. Commissioner
Docket No. 207-63.
United States Tax Court
T.C. Memo 1965-163; 1965 Tax Ct. Memo LEXIS 167; 24 T.C.M. (CCH) 865; T.C.M. (RIA) 65163; June 21, 1965
*167 1. Held, petitioner was not engaged during the taxable year 1960 in carrying on a trade or business of a theatrical producer; and accordingly he is not entitled to deductions under section 162(a) of the 1954 Code for amounts claimed to represent the ordinary and necessary expenses of carrying on such a trade or business. 2. Held, further, such amounts are not deductible as ordinary and necessary expenses paid or incurred for the production or collection of income, under section 212(1) of the 1954 Code. Charles A. Dun Leavay, pro se, 117 W. 47th St., New York, N. Y. Arnold Y. Kapiloff, for the respondent. PIERCE Memorandum Findings of Fact and Opinion PIERCE, Judge: The Commissioner determined a deficiency in the petitioner's income tax for the calendar year 1960, in the amount of $900.35. The issues presented for decision are: (1) Whether petitioner is entitled under section 162(a) of the 1954 Code to certain deductions, which he alleges represent ordinary and necessary business expenses of carrying on a trade or business of a theatrical producer. Decision of the issue hinges on two subsidiary questions: (a) Was petitioner actually engaged in carrying on a business of a theatrical producer during the taxable year 1960? (b) If he was so engaged, has he substantiated the amounts of the claimed deductions both as to payment thereof, and as to their character as ordinary and necessary expenses of carrying *169 on such a trade or business? (2) If the amounts involved in issue (1) are not deductible under section 162(a), are the same deductible under section 212(1) of the 1954 Code as ordinary and necessary expenses paid or incurred for the production or collection of income? Findings of Fact Petitioner, Charles A. Dun Leavay, during the taxable year 1960 and at all times since, resided in New York City. He filed an individual Federal income tax return on the cash receipts and disbursements basis for the calendar year 1960 with the district director of internal revenue, Manhattan, New York. Since the year 1956, petitioner has been a public school teacher. In 1956, he taught in the public schools of Pinal County, Arizona. Beginning in 1957 and for the succeeding years, he has taught school in the public schools of the City of New York. During the taxable year 1960, which is here involved, petitioner was classified as a regular substitute teacher; and in said year he taught practically every day of the school term. His post of duty was the Jefferson Park Junior High School, where he taught English, mathematics, history, and geography. His teaching day extended from 8 o'clock in the morning *170 until 3 o'clock in the afternoon; and occasionally after school hours, petitioner attended faculty meetings and conferences and meetings of the teachers' union of which he was a member. During July and August of 1960, petitioner traveled in Europe. Ever since the early 1940's, when petitioner was a student at the University of Michigan, he has had an interest in drama and the theatre. While a student at the university, petitioner wrote two plays which he sold to a New York producer; and he also wrote three other plays, two of which were awarded prizes. Upon graduation from Michigan in 1941, petitioner received a Rockefeller Foundation grant to spend a year directing and acting in plays at the Cleveland Play house, in Cleveland, Ohio. In 1945-46, he was a member of the cast in a play produced for the entertainment of troops overseas. Upon petitioner's return from overseas, he went to Detroit, Michigan, in 1946 or 1947 where he took a job writing advertising copy and where he also taught at a branch of the University of Michigan located in Detroit that had some sort of connection with the United Automobile Workers (U.A.W.). While in Detroit, petitioner became acquainted with certain *171 officials of the U.A.W. Petitioner conceived the idea of producing a play in which he would utilize as the actors and actresses, U.A.W. members working in factories in the Detroit area who had an interest and talent in dramatics. Petitioner and the U.A.W. officials initially agreed that the sale of tickets for the play would be promoted and handled through shop stewards in the various U.A.W. locals in the Detroit area. Prior to the production of the play, U.A.W. officials withdrew their support for the project; and the sale of tickets was not as great as it had been expected. Petitioner nevertheless produced the play "Walk Into My Parlor," which resulted in an alleged financial loss that was borne by the petitioner. Thereafter, petitioner taught English for a year at a college in Ohio; and subsequently (but prior to 1953) produced and acted in several plays or musicals, all of which resulted in other alleged losses that were borne by petitioner. In 1953 petitioner "decided to stop losing money"; and he enrolled in that year at Hunter College in New York City for the purpose of acquiring sufficient credits to permit him to obtain a teacher's certificate that would enable him to *172 teach in public school systems. He finished his work at Hunter College in 1955; and, as hereinbefore found as a fact, he has been a school teacher ever since. At or about the time when petitioner became employed in the New York City school system in 1957, he joined a teachers' union. And some time thereafter, and prior to 1960, he conceived the idea of forming a theatrical company which would be composed of former professional actors who had turned to teaching school in the New York City schools, in much the same manner as petitioner had recruited factory workers as actors and actresses in Detroit in his above-described earlier venture with the U.A.W. Petitioner hoped to persuade the Board of Education, the teachers' union, and the Parent-Teachers Association in New York City of the cultural advantages and the public relations merit of such a project as he had in mind. It was petitioner's belief that if the teachers' union, with 30,000 members, could be prevailed upon to sponsor and attend a production staged by him, it would be a "very good thing, both for the Board of Education of the City of New York and for the unionized teacher groups in the city." In September 1960, petitioner *173 registered the name "Company of Teachers," under the New York Fictitious Name statute, with the County Clerk of New York County. During the taxable year 1960, which is here involved, petitioner's activities as a theatrical producer were confined to the presentation of three performances of a musical revue. On the evening of November 3, he presented a tryout performance at the auditorium of the Jefferson Park Junior High School, where he was teaching school; on November 9, he presented a performance at the same location for the Parent-Teachers Association of said school; and on November 25, he presented a "rehearsal performance" at a location not shown by the record. The participants in the several presentations of the musical revue included only paid professional entertainers, who were paid by petitioner for their services. Petitioner did not charge any admission to these performances. Thereafter in February 1961, this same musical revue was presented again, on a no-admission-charge basis, at the Jefferson Park school. And on a single Monday evening in May 1961, a final version was presented at the St. Mark's Playhouse in New York City, a small theater having a seating capacity *174 of 299 people. Although some friends of petitioner were proceeding to sell tickets to this performance and did sell about $50 worth, petitioner stopped them from selling tickets prior to the performance date. About 150 persons attended this performance, most of whom were admitted free of charge. Petitioner did not report the $50 realized from the sale of tickets as income on his 1961 return. Petitioner had no intention of realizing a profit on the St. Mark's Playhouse presentation, or on any other performance which he presented prior thereto and since he came to New York City. It was petitioner's intention at some indefinite time in the future, when he had assembled a production that he believed to be good enough to present to the general public under the sponsorship of the teachers' union, and/or the New York City Board of Education and/or the Parent-Teachers Associations, to present said production, charge for admission thereto, and perhaps realize a profit therefrom. Petitioner, at no time material, had any office as such for his claimed theatrical producer business. He asserted that one-half of the space of the apartment where he lived and paid $33.06 per month rent, was utilized *175 for an office. Petitioner had no telephone in the apartment; and consequently was not listed in any telephone directory. For the taxable year 1960, which is here involved, petitioner reported on his Federal income tax return a salary from the City of New York for teaching school, in the amount of $5,369. On a Schedule C attached to said return, petitioner reported a claimed loss from the operation of an alleged business called the "Company of Teachers," in the amount of $6,345.78, computed as follows: Income
None
Deductions: Rent
$ 222.36
Interest
352.77
Depreciation
80.00
Other business expenses: Furniture and fixtures
$ 262.00
Promotional
1,247.60
Transportation
782.00
Telephone
540.80
Production expenses
1,464.00
Theater tickets
299.85
Miscellaneous
1,094.40
5,690.65
Loss
$6,345.78
The reported loss was utilized as an offset against petitioner's school teacher's salary, with the result that petitioner showed no tax liability for 1960. The same situation was true for the years 1956 and 1957, and 1961 through 1963. The reported loss on petitioner's 1958 return was $1,780.02, and his reported school teacher's salary for said *176 year was $4,558.22. (The respondent was unable to locate a return for petitioner for the year 1959; and the record does not establish whether petitioner filed a return for said year.) Petitioner, during 1960, paid $352.77 as interest on indebtedness for said year. Respondent, upon audit of petitioner's 1960 return, disallowed all the above-listed deductions claimed on Schedule C of such return, on the grounds that they [Do] not constitute ordinary and necessary expenses incurred in carrying on a trade or business within the meaning of section 162 of the Internal Revenue Code of 1954 or incurred in the production of income within the meaning of section 212 of the Internal Revenue Code of 1954. Furthermore, these expenditures are disallowed as deductions for lack of substantiation. Ultimate Finding of Fact Petitioner was not engaged in carrying on a trade or business of a theatrical producer at any time in the year 1960. Opinion 1. Section 162(a) of the 1954 Code grants a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." [Emphasis supplied. *177 ] Petitioner, in the instant case, claimed in his 1960 Federal income tax return, over $6,300 of deductions, which he asserts were the ordinary and necessary expenses of carrying on a trade or business of a theatrical producer in 1960 - against no amount of income received. The respondent, in disallowing these deductions, determined that petitioner was not engaged in carrying on any such business; and, further, that even if he had been so engaged, the deductions were not substantiated. We take up first the question of whether petitioner was engaged in carrying on such a trade or business. The question is one of fact. Morton v. Commissioner, (C.A. 2) 174 F. 2d 302, 303, certiorari denied 338 U.S. 828, affirming a Memorandum Opinion of this Court; Kerns Wright, 31 T.C. 1264, 1267; Frederick A. Purdy, 12 T.C. 888, 892. Both this Court and other courts have recognized that whether activities of a taxpayer rise to the level of a trade or business depends upon the existence of a motive to earn a profit from those activities. Henry P. White, 23 T.C. 90, 93-94, affd. (C.A. 6) 227 F. 2d 779, and cases there *178 cited; Lamont v. Commissioner, 339 F. 2d 377 (C.A. 2), affirming a Memorandum Opinion of this Court. If the taxpayer has sustained a long-continued series of losses from his activities, that circumstance is a strong indication that he did not harbor a profit motive in pursuing such activities. Henry P. White, supra, p. 94; Frederick A. Purdy, supra, p. 892. Nor is the requisite present intention to earn a profit supplied by a mere hope that at some indefinite time in the future, the taxpayer's activities might yield a profit. American Properties, Inc., 28 T.C. 1100, 1114, affd. per curiam 262 F. 2d 150 (C.A. 9); Frederick A. Purdy, supra, pp. 892-893. After seeing the petitioner and listening to his testimony and after consideration and weighing of all the evidence on the point, we have concluded and found as an ultimate fact that petitioner was not engaged in carrying on a trade or business of a theatrical producer in 1960. It is perfectly evident that petitioner in 1960 had no present intention, hope, or expectation, to realize a profit from the three performances which he presented in that year. *179 This is admitted by petitioner; and it was a necessary consequence of his failure to charge any admission to these performances. Moreover, petitioner's theatrical activities resulted in losses for each of the prior years, 1956 through 1958, and the subsequent years 1961 through 1963. (Petitioner's return for the year 1959 could not be located; but in the light of the results in the other years, it is a reasonable inference that his 1959 activities likewise resulted in a loss.) The purposes and intent of the petitioner in pursuing his theatrical activities in 1960, as we gather from this sometimes confusing record, was to experiment - with the hope that he could uncover talent and put together a production from which he might some day derive a profit; and to establish a reputation for himself as a producer, which he hoped might gain for him the patronage or sponsorship of the teachers' union, the New York City Board of Education, or the Parent-Teachers Associations in the New York area. These do not, in our opinion, suffice to accord to his 1960 activities the necessary profit motive for a present business engagement. See Lamont v. Commissioner, supra; Frederick A. Purdy, supra; *180 American Properties, Inc., supra. We hold that petitioner has not established that he was engaged in a trade or business of a theatrical producer in 1960. It follows that his claimed deductions are not allowable as ordinary and necessary business expenses under section 162(a). 2. The respondent, in his notice of deficiency, also determined that the claimed deductions were not allowable as ordinary and necessary expenses paid or incurred "for the production or collection of income" under section 212(1). Clearly, petitioner's activities in regard to the presentation of the three performances in 1960 (which would appear to be his only activities of that year which could have had any connection with the possible production or collection of income) were not undertaken for the purpose of producing or collecting income for no admissions were charged to these performances. Accordingly, whatever expenses he may have paid in connection therewith are not deductible under section 212(1). In the light of our above holdings, it is unnecessary for us to consider the question of whether petitioner substantiated the amounts claimed as expenses, either as to their payment or as to *181 their ordinary and necessary character. Petitioner did substantiate the payment of $352.77 in 1960 as interest on indebtedness. Interest is deductible under section 163(a) as a so-called "page 2" deduction, irrespective of whether petitioner was engaged in a trade or business, if a taxpayer itemizes his page 2 deductions and does not claim the standard deduction in lieu thereof. However respondent has, in the tax computation attached to his notice of deficiency herein, allowed petitioner a standard deduction in the greater amount of $536.90 - so that allowing an itemized deduction for the above smaller amount of interest would not benefit the petitioner in the instant case. Decision will be entered for the respondent.