Loy D. Mercer v. Commissioner.
Mercer v. Commissioner
Docket No. 5582-64.
United States Tax Court
T.C. Memo 1966-82; 1966 Tax Ct. Memo LEXIS 200; 25 T.C.M. (CCH) 467; T.C.M. (RIA) 66082; April 20, 1966
*200 Held, taxpayer's activities with respect to a few head of cattle he owned did not constitute a trade or business in the years involved, and amounts taxpayer paid to his brother, purportedly for the care and feeding of those cattle, are not deductible as ordinary and necessary expenses paid or incurred in carrying on a trade or business. Courtney Vallentine, 515 Roma, N. W., Albuquerque, N. Mex., for the petitioner. Leo K. O'Brien, for the respondent. DRENNEN
Memorandum Findings of Fact and Opinion DRENNEN, Judge: Respondent determined deficiencies in petitioner's income tax for the years 1962 and 1963 in the amounts of $1,100.02 and $751.86, respectively. The only issue is whether petitioner may deduct the sums of $5,500 in 1962 *201 and $3,500 in 1963 paid to petitioner's brother, allegedly for the care and feeding of petitioner's cattle, as losses incured in the business of raising cattle in those years. Findings of Fact The stipulated facts are found as stipulated. [1]
Loy D. Mercer, referred to herein as petitioner, is an unmarried individual with residence at Lignite, Alaska. He filed Federal individual income tax returns for the years 1962 and 1963, on a calendar year and cash basis, with the district director of internal revenue for the district of Alaska. Berle E. Mercer, referred to herein as Berle, is an older brother of petitioner. Both were raised on a cattle ranch in Nebraska owned and operated by their parents. Berle moved to Lignite, Alaska, in 1957 with a herd of cattle he had owned in Nebraska. He settled on a ranch, consisting of 160 acres of homestead property with a house, two barns, and several other outbuildings thereon, and a large acreage of land leased from the Federal Bureau of Land Management. The latter acreage had been reduced to approximately *202 30,000 acres by 1962 and at that time Berle had approximately 5,000 acres of his ranch under fence, and approximately 300 acres developed for the production of hay. Berle had engaged in ranching activities at this ranch from 1957 up to the time of the trial. He had invested $75,000 to $80,000 in the ranch and had a full line of farm machinery on the ranch in 1962 and 1963. As developed at that time Berle's ranch would support about 60 head of livestock. He had about 50 head of livestock of his own on the ranch in 1962 and 1963. Berle and his wife had six children, ranging in ages from 12 to 1 1/2. The older children helped Berle and his wife operate the ranch. Berle was unable to employ much outside labor to help him on the ranch. Petitioner was approximately 21 years of age in 1958. He has had 1 year of college, one semester of which was obtained in Alaska during the spring semester of 1961. He is unmarried. Prior to September 1958 petitioner had owned some purebred Angus cattle which he kept on his father's farm in Nebraska. In the spring of 1958 petitioner moved to Lignite, Alaska. In September of 1958 he traded his father the Angus cattle he owned in Nebraska for six head of *203 crossbred Angus-Highland heifers which his father owned and had shipped to Alaska with additional cattle of the same breed that Berle had acquired at that time. These heifers were on Berle's ranch at Lignite and remained there after petitioner acquired them. Petitioner filed an application for a 640-acre homestead tract in the Lignite, Alaska, area in 1958 but this was rejected in a blanket disallowance by the Government of 640-acre homesteads in Alaska. Petitioner later filed an application for a 160-acre homestead tract in the same area, but this was also rejected in November 1963. Petitioner has not filed for any additional land in Alaska since 1963. Having no place else to keep his cattle, petitioner made arrangements with Berle to keep the cattle on Berle's ranch. It was agreed or understood that petitioner would seek employment elsewhere, for the time being at least, and would deposit his cash earnings in a joint bank account with Berle, withdrawing whatever amount he needed for his own personal use, with the remainder being available to Berle for the operation of the ranch, including the care and feeding of petitioner's livestock. Petitioner was not to acquire any proprietary *204 interest in Berle's ranch and no joint venture or partnership agreement was entered into between petitioner and Berle. Petitioner's cattle were mingled with Berle's herd and were treated the same as Berle's cattle. Berle's bulls were available for breeding with petitioner's cattle. Four of petitioner's six 2-year-old heifers died during the winter of 1958 and 1959. During 1962 petitioner owned a total of five animals, consisting of two mature cows, one yearling heifer, and two heifer calves, and during 1963 petitioner owned a total of four animals, consisting of two mature cows, and one 2-year-old heifer, and one yearling heifer, all of which were kept at Berle's ranch. During 1963 petitioner traded a calf for a saddle and horse gear, and in 1964 he traded two of his cattle for two horses. Petitioner has not sold any cattle owned by him in Alaska. In 1965 petitioner owned two cows, two horses, and some horseback-riding equipment, all of which were kept at Berle's ranch. He also owned a 1964 Willys Jeep Wagonner, a 1961 Volkswagen sedan, and an old stakebed truck, and he held a license for guiding in the interior of Alaska. He held no interest in any land in Alaska. From January *205 to May 1962 petitioner was employed as a supply specialist by the Federal Electric Corp. at Fort Wainwright, near Fairbanks, Alaska. Berle's ranch at Lignite is approximately 110 miles south of Fairbanks, and petitioner spent some of the weekends and holidays at the ranch during this period. During the period May to November 1962 petitioner was employed by the same company at Point Barrow, Alaska. During the months of November and December 1962 petitioner was unemployed and stayed at Berle's ranch. From January to April 1963 petitioner traveled in "the lower 48" States, visiting relatives for the most part. He spent April and May 1963 at Berle's ranch. From late May to September 1963 petitioner was employed at the Usibelli Coal Mine, about 10 miles from Lignite. During this period Berle was ill and petitioner spent as much time as possible at the ranch. From September through December 1963 petitioner was employed by R.C.A. Service Co. at Clear, Alaska, approximately 30 miles from Lignite. When petitioner was at Berle's ranch he performed general duties around the ranch, taking care of the livestock, feeding them, fixing fences, cleaning the barns, etc. He received no compensation *206 for this work from Berle and he paid Berle nothing for his room and board while he stayed there. On his Federal income tax return for 1962 petitioner reported gross income in the amount of $6,410.34 as wages received from Federal Electric Corp. On the schedule of farm income and expenses attached to the return he reported no income, but deducted as an expense the amount of $5,500 "Paid to Berle E. Mercer for keep of cattle." No other farm expenses were claimed. The resulting farm loss of $5,500 was deducted from gross income to arrive at adjusted gross income on the return. On his Federal income tax return for 1963 petitioner reported as gross income wages received from various sources totaling $6,768.65 and deducted therefrom the amount of $3,500 as farm loss. The schedule of farm income and expenses reported no income and a single expense item of $3,500 "Paid to Berle E. Mercer for keep of cattle." During the years 1962 and 1963 petitioner either paid over to Berle or made available to Berle through deposits to a joint bank account the sums of $5,500 and $3,500 respectively. [2] Berle included these amounts in his gross income reported on his Federal income tax returns for the *207 respective years. Berle has not repaid any of these amounts to petitioner and both petitioner and Berle state that there is no obligation for Berle to do so. During the year 1964 Berle received from petitioner the sum of $6,000, and during the period January 1, 1965, to October 1965 Berle received the sum of $3,500 from petitioner. Neither petitioner nor Berle made any effort to keep a record of the cost to Berle of keeping petitioner's cattle on Berle's ranch. Raising cattle at a profit in the interior of Alaska is a difficult task. The severe claimate and long hours of darkness during the winter months make it necessary to feed the animals with stored hay for the most part and to provide them with heated water. It requires about 4 tons of hay to sustain one animal during the winter months. While hay can be grown locally for about $40 per ton, it is quite expensive if imported from the south. *208 Farm labor is quite expensive, machinery parts are hard to get and are costly, as is gasoline, and transportation poses a problem. Imported cattle find it hard to survive and they do not reproduce well. Locally grown cattle do much better. Berle is of the opinion that bison would be more profitable and easier to raise than cattle. He originally planned to move a herd of bison he owned in Nebraska to Alaska but was prevented from doing so by Alaskan law. In 1963 he was permitted to start raising bison, which he did. There have been no known cattle-ranching operations that were profitable or successful in the interior of Alaska. Berle has sold very little beef or livestock since he started his ranch in Alaska and has never realized a profit from the cattle operation. He estimated it would require a herd of at least 150 head to produce a profit from the cattle operation and that he will not be able to show a profit for another 10 years, although he intends to continue working at it. Berle has supplemented his income by conducting dude ranch and guiding activities at his ranch. Finding of Ultimate Fact Petitioner was not engaged in the business of raising cattle or other livestock *209 in the years 1962 and 1963. Opinion The single issue is whether the amounts paid to Berle by petitioner in the years 1962 and 1963 are deductible by petitioner as ordinary and necessary expenses paid or incurred in carrying on a trade or business. Sec. 162(a), I.R.C. 1954. Petitioner claims that he was in the business of raising cattle for a profit and that the amounts he paid Berle were ordinary and necessary expenses of that business. Respondent's position is that petitioner's activities with respect to his cattle during the years involved did not constitute the present carrying on of a business, and hence the expenditures made in connection therewith are not deductible. We agree with respondent. Business has been defined as including "That which occupies the time, attention and labor of men for the purpose of a livelihood or profit." Flint v. Stone Tracy Co., 220 U.S. 107, 171. "Carrying on a business * * * implies an occupational undertaking to which one habitually devotes time, attention, or effort with substantial regularity," Fahs v. Crawford, 161 F. 2d 315, 317, and with the good faith intent to make a profit. Doggett v. Burnet, 65 F. 2d 191. *210 The intent of the taxpayer has a material bearing on the issue, Morton v. Commissioner, 174 F. 2d 302, affirming a Memorandum Opinion of this Court, certiorari denied 338 U.S. 828, although it is not conclusive, Kerns Wright, 31 T.C. 1264, affirmed per curiam, 274 F. 2d 883, and the fact that an activity is conducted at a loss does not in itself preclude its being considered a business. Doggett v. Burnet, supra.Whether a person's activities constitute a trade or business must be decided on the facts of each case. Frederick A. Purdy, 12 T.C. 888. A person may be engaged in more than one trade or business, Eugene H. Walet, Jr, 31 T.C. 461, affirmed per curiam 272 F. 2d 694, and the fact that petitioner here was otherwise gainfully employed would not necessarily mean that he was not engaged in the cattle-raising business. But applying all of the above dogmas that are most favorable to petitioner to the facts of this case, and accepting as true all of petitioner's evidence except his conclusion that he was presently engaged in the business of raising cattle for a profit, we still *211 cannot find that petitioner's activities in the years here involved constituted the business of raising cattle for a profit. This is because petitioner's activities in the years 1962 and 1963, and in subsequent years as well, were simply not involved in rasing cattle for a profit. Petitioner owned no land nor any interest in land upon which he could conduct such a business. He had no machinery or equipment with which to operate such an activity, and the evidence would indicate that he had no capital to acquire the necessary equipment and improvements. He devoted only his spare time to ranching, and even that was not devoted to his own cattle in particular. The few cattle he started with were being depleted but he made no apparent effort to replace them or to increase the productivity of those remaining. Instead he traded some of his cattle for horses and riding equipment. The evidence is that he sold no cattle or beef during the years 1962 and 1963 and the record would indicate that he had sold nothing in the years either before or after those years. All petitioner did with respect to his cattle in the years here involved was to turn them over to Berle to treat them as a part of *212 his own herd. He also turned over to Berle all of his spare cash, but there is no relationship shown by the evidence between the amounts petitioner made available to Berle and the cost of feeding and caring for petitioner's cattle; nor is there any evidence that Berle was to use these funds exclusively for that purpose. In fact, if it cost petitioner the amounts he paid Berle just to feed and care for the few head of cattle and livestock petitioner owned, it is pretty clear that petitioner could never expect to make a profit, unless he changed his method of operations. Petitioner may truly intend to eventually go into the cattle-raising business on his own with the (somewhat optimistic, we think) intent to make a profit therefrom, but it seems pretty clear that he had not reached that point during the years before us. He was not actively conducting a cattle-raising business during those years; he simply turned his cattle over to Berle to keep. Possibly he was preparing to go into the business if and when he obtained some land of his own and some capital to improve and keep it; perhaps it can be said that he was biding his time until a good opportunity came along. But this does not *213 constitute the conduct of a business. While the actual making of a profit from the activity during a particular year is not necessary to permit its recognition as a business, there must at least be a good faith intent and purpose to make a profit, and the reasonableness of the expectation of making a profit should have some bearing on the bona fides of such expressed intent and purpose. Here we can find no reasonable expectation that petitioner would ever earn a profit from his cattle activities unless there was a radical change in his modus operandi, and when and if that might take place is not apparent from the record. It would appear that petitioner would have to either acquire land (and capital to operate it with) of his own, or possibly enter into some joint venture arrangement with Berle, before he could expect to make a profit. Both petitioner and Berle disclaim the latter possibility. But as long as petitioner continues to pay over all of his excess cash to Berle and takes no steps toward either increasing his herd or realizing some income therefrom we do not think he could have a bona fide intent to make a profit from his cattle. For the above reasons we have found as *214 an ultimate fact that petitioner was not in the business of raising cattle for profit during the years 1962 and 1963. Consequently, the amounts he paid to Berle in 1962 and 1963 are not deductible as ordinary and necessary expenses paid or incurred in carrying on a trade or business. Petitioner has not claimed that these amounts were deductible under any other provision of the internal revenue laws. Consequently, Decision will be entered for the respondent. Footnotes
1. The case was submitted on a stipulation of facts and the depositions of Loy D. Mercer and Berle E. Mercer, taken at Fairbanks, Alaska.↩
2. While this allegation in the petition is denied in respondent's answer, respondent does not question the fact or the amount of the payments in either year on brief. Consequently we accept the testimony of both petitioner and Berle that these amounts were paid to Berle by petitioner.↩