Celeste B. Smith v. Commissioner.
Smith v. Commissioner
Docket No. 5123-70 "SC".
United States Tax Court
T.C. Memo 1971-122; 1971 Tax Ct. Memo LEXIS 209; 30 T.C.M. (CCH) 516; T.C.M. (RIA) 71122; May 27, 1971, Filed. Celeste B. Smith, pro se, 2015 Nottingham Way, Albany, Ga. Shuford A. Tucker, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined a deficiency in petitioner's income tax for the calendar year 1966 in the amount of $298.54. The issue for decision is whether petitioner during the calendar year 1966 was engaged in the trade or business of operating a dog kennel so as to be entitled to a deduction for expenses or losses of that operation. Findings of Fact Some of the facts were orally stipulated and are found accordingly. Celeste *210 B. Smith, hereinafter referred to as petitioner, resided in Albany, Georgia at the time of the filing of her petition in this case. She filed her individual Federal income tax return for the calendar year 1966 with the district director of internal revenue at Atlanta, Georgia. During the year 1966, petitioner lived in Albany, Georgia, and was employed as a full-time teacher in the Dougherty County, Georgia School System where she had been teaching for several years. Petitioner's father had been a veterinarian, and petitioner gained some experience with dogs from working with him. In 1962, while living in an apartment with other persons, petitioner purchased for $35 a female cocker spaniel as a pet. She had attended dog shows since 1960 but prior to 1966 had not shown any dog. In May 1964 petitioner bought a home and within a month enclosed with wire fencing a 12- by 15-foot space in the yard in which to keep her pet dog. Following the death of her father in January, 1965, petitioner received a little over $2,000 from an insurance policy. After receiving this sum, petitioner decided she was in a position to "operate a little bit more in the dog line." In July 1965 petitioner bought *211 for $100 a 4-month-old cocker spaniel pup from a kennel that showed dogs. The pedigree on this pup was sufficient to permit entry of the dog in shows. Petitioner planned to use this male dog for stud for her female dog and to obtain stud fees for his services to other female dogs. Petitioner had unsuccessfully used three different male dogs in Albany in 1965 in an effort to get some pups from her female dog. This dog was not of the quality that would produce pups petitioner would plan to keep but she planned to sell the pups. In 1966 petitioner improved the enclosure in her yard with a concrete floor, a covered roof, and walls on two of the four sides. Sleeping boxes for the two dogs were kept in the enclosure. The space was ample for two dogs and possibly could have been used for three dogs. Petitioner was of the opinion that a dog without championship status obtained through wins at shows would bring only $35 to $45 per stud service whereas a dog that had obtained championship status would bring $40 and up per service. Petitioner was also of the opinion that breeders would attend dog shows and observe males that might be available for stud service. Beginning in January 1966 when *212 her male dog was 9 months old, petitioner exhibited him at various dog shows. He was shown four times in Florida in January, once in Florida and once in Georgia in February, and three times in Georgia in March. In April he was shown once in Richmond and once in Baltimore. The dog was shown five times in Florida in June, three times in South Carolina in July, once in Tennessee in September, and twice in Georgia in November. The shows attended by petitioner were on weekends or holidays and therefore they did not interfere with her work as a teacher. The April shows in Richmond and Baltimore were during 517 petitioner's spring vacation. Petitioner continued to show the dog in 1967 and part of 1968 but the dog was never able to achieve championship status. Petitioner had no employees to help with the dogs in 1966 and if she were away from home would board the dogs at a kennel. On at least two occasions during 1966, petitioner advertised the male cocker spaniel as being available for stud. The advertisements were in local newspapers and were run for several consecutive days. During 1966, petitioner attempted to use the male cocker spaniel in stud on four separate occasions, two *213 of which were with her female dog. On the first attempt the male did not complete his assignment and on the second two attempts the female did not conceive. He was used successfully with petitioner's female cocker spaniel in October resulting in a litter of nine pups born in December. All of the pups were sold as pets in the calendar year 1967 for a total amount of about $400. In February 1966 petitioner arranged to purchase a female show quality cocker spaniel pup but before the date set for delivery the pup died of distemper. At some time after 1966 petitioner changed her planned activities with dogs and decided not to keep any male dogs but to keep and breed females and sell the pups. At the time of the trial of this case, petitioner owned three females of breedable age, two of which had completed their championship, one 9-month-old male pup and two 3-month-old male pups which were for sale. In September 1968 petitioner discovered that the male dog she had bought in July 1965 had a hereditary defect and dropped offering him for stud. Prior to making this discovery petitioner had received three stud fees for his services, two of $30 each and one in the form of a pup she sold *214 for $50. Petitioner in 1966 kept meticulous records of her receipts and expenses in maintaining the dogs and showing the male. The only revenue reported by petitioner on her 1966 income tax return from her kennel operations was the amount of $19.50, which was received as awards from shows. There was no income derived from stud fees or from the sale of pups in the calendar year 1966. Petitioner had the following expenses which she set forth on her return showing a resultant operating loss of $1,526.26: Expense
Amount
Veterinary expense
$ 117.36
Feed
90.57
Advertising
15.39
Kennel supplies
97.00
Boarding fees
34.00
Phone calls
2.86
Show entry fees
120.00
Travel expense attending dog shows:
Lodging
185.74
Auto expense - 8,383 miles at 10 cents per mile
838.30
Depreciation - Schedule 44.54 $1,545.76 *13 DEPRECIATION SCHEDULE
Asset
Acq'd
Cost
Life
Prior
Current
Kennel fencing
3-1-65
$200.00
15 years
11.10
$13.33
Kennel improvement
8-3-66
104.63
15 years
.00
4.64
Transport crate and pen
1-3-66
36.45
5 years
.00
7.29
Cocker spaniel (female)
6-1-65
100.00
7 years
7.14
14.28
Cocker spaniel (male)
1964
35.00
7 years
5.00 5.00
$44.54
*215 Respondent determined the deficiency in petitioner's income tax set forth in his statutory notice by disallowing the deduction claimed by petitioner for the year 1966 for the loss from operating her kennel. Opinion Petitioner contends that her efforts were directed at the establishment of a kennel with the intent of operating it as a profitable enterprise, that she did in fact operate the kennel with the usual techniques 518 associated with the business of a dog kennel, and that the expenses incurred are deductible. It is respondent's position that petitioner was not engaged in the trade or business of operating a dog kennel for profit and that the most favorable view of petitioner's activities based on this record is that she hoped at some later time to engage in a kennel business and was taking steps during 1966 looking toward preparing herself to engage in such business. Section 162, I.R.C. 1954, provides for the deduction of expenses incurred in the operation of a trade or business, and section 165(c) provides for deduction by an individual of losses incurred in a trade or business or in a transaction entered into for profit. Therefore, for petitioner to be entitled *216 to deduct her expenses in connection with her dogs or the losses from her kennel operation in 1966, she must show that the operation was a trade or business or a transaction entered into for profit. One of the basic criterion of a "trade or business" is that it be operated for the purpose of making a profit. Hirsch v. Commissioner, 315 F. 2d 731, 736 (C.A. 9, 1963), affirming a Memorandum Opinion of this Court. As we pointed out in Margit Sigray Bessenyey, 45 T.C. 261, 273-274 (1965), affirmed 379 F. 2d 252 (C.A. 2, 1967), a loss in a particular year or even a long history of losses is not conclusive that the operation was not conducted for the purpose of making a profit but this factor may be important in determining the purpose of the operation. In that case we also noted that while a taxpayer's expectation of profit from the operation must be bona fide it is not necessary that it be a reasonable expectation. Whether a taxpayer actually possesses the requisite profit motive is a question of fact to be decided from a consideration of all of the evidence in a particular case. Hirsch v. Commissioner, supra.The fact that the *217 operation is small and can be carried on by a person otherwise employed in a fulltime salaried position does not preclude the activity from being a trade or business entered into with the expectation of profit. However, the amount of time given to the undertaking and the motive of the taxpayer's efforts are factors to be considered. Kerns Wright, 31 T.C. 1264 (1959), affirmed 274 F. 2d 883 (C.A. 6, 1960). Petitioner testified that she originally intended to obtain payments for the services of a stud dog which she hoped would obtain its championship. Although she did not specifically state that she intended in this manner to make a profit, her argument at the conclusion of the trial was that she did. However, when a taxpayer's claims or stated intent appears improbable in light of the other evidence of record, his intent must be determined from all the evidence with particular regard to his activities as compared to his claimed intent. Army Times Sales Co., 35 T.C. 688 (1961). While petitioner kept accurate records of her income and expenses, her expenditures display a lack of concern for the economics of the operation. Petitioner's expenditures *218 in showing her dog appear to be disproportionate to any return she could expect to receive from any difference in the stud fees received from a dog with championship status as compared to one without such status. Also, the continued showing of a dog which produced only minimal winnings is indicative of lack of profit motive. Likewise indicative of a lack of profit motive. is the keeping of a female not of show quality which had been bought for a pet and would produce pups which would sell at a lower price than pups from a show quality female. Petitioner's vacillation in the objectives of her enterprise manifest a lack of preliminary exploration as to the profit potential of a small kennel business. The facts and circumstances as a whole demonstrate that petitioner's operation in 1966 was merely an avocational activity. Based upon the record before us we conclude that petitioner had no bona fide expectation of making a profit from the type of operation she was engaging in or planning to engage in during 1966. The weight of the evidence indicates that petitioner's activities were primarily in the nature of a hobby and were at most exploratory as to the business potential of operating *219 a dog kennel for profit. We therefore conclude that petitioner has failed to show that in 1966 she had the requisite profit motive to be engaged in a trade or business of operating a dog kennel or that the expenditures she made in connection with her dogs were in a transaction entered into for profit. We hold on the basis of the facts in this record that petitioner is not entitled to deduct her claimed expenses or loss in the operation of her dog kennel in 1966. Decision will be entered for respondent. 519