Newman E. Jones, Jr., and Peggy H. Jones, husband and wife v. Commissioner.
Jones v. Commissioner
Docket No. 4283-62.
United States Tax Court
T.C. Memo 1964-264; 1964 Tax Ct. Memo LEXIS 76; 23 T.C.M. (CCH) 1613; T.C.M. (RIA) 64264; October 6, 1964
*76 Gayle Malone, Trenton, Tenn., and Barrett Ashley, for the petitioners. Vallie C. Brooks, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: A deficiency has been determined by the Commissioner in the income tax of petitioners for the taxable year 1960 in the amount of $11,582.68. The sole issue to be decided is whether respondent has erred in disallowing the deduction of a claimed partially worthless debt. Findings of Fact The agreed facts are found as stipulated. The petitioners, Newman E. Jones, Jr., and Peggy H. Jones, are husband and wife. During the calendar year 1960 they resided in Dyersburg, Tennessee, and they now reside in that city. Petitioners filed their joint Federal income tax return for the taxable year 1960 with the district director of internal revenue at Nashville, Tennessee. Upon his discharge from the Armed Forces of the United States in 1947, Newman E. Jones, Jr., sometimes hereinafter referred to as the petitioner, was employed by Newman Jones, Inc. Newman Jones, Inc., sometimes hereinafter referred to as the corporation, is a Tennessee corporation organized in 1947 to engage in the business of selling *77 Ford automobiles and trucks in the city of Dyersburg, Tennessee. The corporation was organized by petitioner's father, Newman Jones, Sr., with a capital of $10,000. In 1954 upon his father's death, petitioner inherited 50 percent of the capital stock in the corporation. Since 1954 he has owned 50 percent of the capital stock in such corporation and his mother and brother have each owned 25 percent of such stock. Petitioner also inherited from his father in 1954 the Jones Brothers Equipment Company of Dyersburg, sometimes hereinafter referred to as Equipment, an individual proprietorship which is primarily engaged in the business of constructing buildings under contract. Since his father's death in 1954 petitioner has conducted and been responsible for the operations of both the corporation and Equipment. For the years 1947 through 1955 and into 1956, the operation of the corporation was successful. In 1956 petitioner found that his interest was lying increasingly more and more in the construction business and he thought that there was a greater potential for profit in such business. After the corporation experienced a number of repossessions in 1956 and began what he considered *78 a decline, petitioner concluded that he was going to be compelled to sell the business of the corporation in order that he could continue his construction business. Petitioner attempted unsuccessfully to sell the Ford agency in 1956. The first offer to purchase the agency was received in 1957, but it was not accepted because petitioner did not consider the amount of the offer enough to pay the debts of the corporation to outsiders and to the stockholders. During the years 1957 through 1960 petitioner continued to seek a suitable buyer for the agency without success. Prior to his death in 1954, petitioner's father, Newman Jones, Sr., advanced $10,000 to the corporation which was carried on the corporation's books as a note payable to Newman Jones, Sr., or his estate. At his father's death, petitioner inherited his father's interest in the so-called note of $10,000 due from the corporation. Beginning in 1954 and continuing into 1961, petitioner in his own name and d/b/a Equipment made numerous advances to the corporation, all of which will hereinafter be treated as having been made by petitioner. The advance of $10,000 to the corporation by Newman Jones, Sr., and the advances *79 made to the corporation from time to time by Newman Jones, Jr., and the construction company, the offsets thereto, and the amounts outstanding as of December 31, 1960, and May 31, 1961, as reflected by the books of the corporation and the construction company, are as set forth below: At
At
Description
Dec. 31, 1960
May 31, 1961
Amount due Estate of Newman Jones, Sr. Obligations incurred
before August, 1954
$10,000.00
$10,000.00
Advances Nov., 1955-May 31, 1958 by Jones Bros.Equipment Com-
31, 1955
656.17
656.17
Advances Nov., 1955-May 31, 1958 by Jones Bros.Equipment Com-
pany (Included in note May 31, 1958 face amount $8,583.86)
6,688.46
6,688.46
Advances by Jones Bros. Equipment Company
Before August 3, 1954
$ 629.94
From Aug. 3, 1954-May 31, 1955
1,976.77
2,606.71
Payments Aug. 3, 1954-May 31, 1955
1,292.52
Net of Advances (Included in note May 31, 1958 face amount
$8,583.86)
1,314.19
1,314.19
Advances April, 1958 by Jones Bros. Equipment Co. (Included
in note May 31, 1958 face amount $8,583.86)
581.21
581.21
Amount owing Jones Bros. Equipment Co. for leasehold im-
provements erected in year ended May 31, 1959
7,849.14
7,849.14
Cash advance July 19, 1960 by Newman Jones, Jr.
5,000.00
5,000.00
Cash advances as follows by Jones Bros. Equipment Co.: June 6, 1958
$ 2,000.00
Sept. 7, 1959
4,000.00
Apr. 8, 1960
2,000.00
Oct. 29, 1960
4,000.00
Nov. 9, 1960
1,000.00
Dec. 3, 1960
2,500.00
Dec. 29, 1960
1,500.00
Dec. 29, 1960
2,500.00
Total
$19,500.00
Dec. 29, 1960 repayment
2,500.00
Net outstanding
17,000.00
17,000.00
Cash advance Jan. 31, 1961 by Jones Bros. Equipment Co.
1,000.00
Oct 31, 1960 advance by Jones Bros. Equipment Co.
625.62
625.62
Totals
$49,714.79
$50,714.79
Offsets - Accounts owed to corporation by Jones Bros. Equip-
ment Company
$ 5,914.72
$ 6,210.06
Newman Jones, Jr. Personal
858.10
1,157.63
Total Offsets
$ 6,772.82
$ 7,367.69
Net amounts outstanding
$42,941.97
$43,347.10
*80 The advances by the petitioner to the corporation during the years 1954 through 1961 were made to pay the current operating expenses of the corporation. An advance was usually made to pay off an overdue account of the corporation and thereby prevent the creditor from bringing a collection suit. The funds advanced by petitioner to the corporation could not have been obtained by the corporation from any other source. The financial condition of the corporation was so poor that it could not borrow the money advanced by the petitioner from any local banks or financial institutions. Beginning on October 17, 1955, and continuing to January 31, 1961, the corporation issued to petitioner or to Equipment various documents purporting to be notes evidencing advances made to the corporation by petitioner or the construction company. The date of issuance, amount, maturity date, and rate of interest of each of these so-called notes is as shown in the table below: Date of
Maturity
Rate of
issuance
Amount
date
interest
1955
October 17
$3,000.00
Demand
None
1956
March 13
2,000.00
Demand
None
June 14
3,000.00
None
None
1957
March 22
1,500.00
None
None
1958
June 6
2,000.00
None
None
May 31
8,583.86
None
None
1959
September 7
4,000.00
Demand
None
1960
April 8
2,000.00
None
None
July 19
5,000.00
Demand
5%
October 29
4,000.00
None
None
October 31
625.62
None
None
November 9
1,000.00
None
None
December 3
2,500.00
None
None
December 29
1,500.00
None
None
1961
January 31
1,000.00
None
None
*81 The "notes" listed above were not always issued at the same time the particular advance which the note represented was made. An advance by the petitioner to the corporation and the issuance of a note by the petitioner as president of the corporation to cover such advance was an informal procedure. In a typical transaction the manager of the corporation would advise the petitioner of the necessity of having $1,000 or $1,500 "to get a creditor out of the office" and petitioner would instruct the bookkeeper at Equipment to issue a check to the corporation. If petitioner was out of town, there might be a delay of a few days before he returned to the office and issued a note on behalf of the corporation to cover the advance. The notes issued by the corporation were not secured. Petitioner did not ask or demand any collateral for the notes issued. Only one of the notes called for the payment of interest. Interest was not paid on any note and petitioner did not expect the corporation to pay any interest thereon. Petitioner did not expect to be repaid for the advances which he and the construction company made to the corporation out of the daily operation of the corporate business. *82 He thought it was necessary to make advances to the corporation to enable it to pay its current debts and continue to appear profitable in order that petitioner would have "a saleable piece of merchandise." He expected payment for his advances only out of the net proceeds from the sale of the corporate business. Petitioner executed an agreement with Universal C.I.T., the lending agency which was handling the financing for all the corporation's new cars and new trucks, wherein all notes payable to himself by the corporation were subordinated to all debts owed to Universal C.I.T. by the corporation. In the corporation's financial dealings with the local bank it was understood by both the corporation and the bank that any outside creditor of the corporation would be paid before the corporation repaid the petitioner for any advances. The notes issued to petitioner by the corporation were also subordinated to notes issued to his mother by the corporation. On February 24, 1961, all the physical assets of the corporation were sold to purchasers subject to the approval of the Ford Motor Co. Certain assets were transferred to petitioner's mother in payment of debts owed to her. Cash *83 on hand and accounts and notes receivable were reserved by the corporation. Corporate property remaining after payment of its debts was insufficient to cover the amount of the advances made thereto by petitioner and his father. On Schedule C (Statement for Jones Brothers Equipment Co.) of their joint Federal income tax return for the calendar year 1960, petitioners claimed a business bad debt deduction in the amount of $31,771.64 for the partial worthlessness of advances made to the corporation in the total amount of $42,812.92. The advance of $10,000 to the corporation by Newman Jones, Sr., prior to his death and the advances to the corporation by Newman Jones, Jr., individually, and Newman Jones, Jr., d/b/a Jones Brothers Equipment Company during the years 1954 through 1961 did not create a valid indebtedness but constituted contributions to the capital of the corporation. Opinion Respondent has raised alternative issues in the event we should find either that a debtor-creditor relationship existed between petitioner and the corporation or in case we should also find that the debts, if any, were business debts. Inasmuch as we have found that a debtor-creditor relationship *84 did not so exist, we need go no farther for such finding is dispositive of the entire issue. This case presents nearly a classic example of contributions to the capital of a corporation disguised as loans. We have here the rather casual issuance of formal promissory notes representing advances made by petitioner. These notes (except for one out of 15) do not bear interest. They either have no stated maturity date or are payable on demand. They are issued by a payor to a payee who was in control of the payor at the date of their issuance. They are not secured by collateral. No interest is shown to have been paid on any of them. Repayment of advances made by petitioner was subordinated either specifically or practically to all other creditors of the corporation, even to petitioner's mother who was a minor stockholder. The most telling factor militating against petitioner's case is his own testimony to the effect he did not look to corporate earnings for repayment of his advances but rather to the proceeds of a possible sale of its assets. Petitioner's position here seems to be that he has suffered a business bad debt loss not pertaining to the automobile agency but rather with *85 respect to his sole proprietorship, Equipment. His reasoning is that, Equipment being a construction business operating substantially on borrowed money and requiring the posting of performance bonds, it was necessary that he, personally, maintain a spotless credit rating; that for him to be connected as operator of a business (the corporation) which could not pay its debts would reflect harmfully upon his credit d/b/a Equipment. We find no evidence here that this reasoning has a basis in fact. Petitioner's witness, a banker upon whose bank he relied to some extent for the financing of Equipment, testified that, upon petitioner's filing of an acceptable personal financial statement, loans would have been made to him regardless of the continued existence of the automobile agency. The most shown by the record regarding petitioner's ability to obtain performance bonds for Equipment in the event the corporation failed is that his application for such bonds would have been "questioned." This is not sufficient to establish that his credit would have been lessened or more than momentarily made questionable. In any event petitioner makes no claim to having been engaged in the business of *86 lending money to business enterprises and for that reason, even though his advances to the corporation had been found to be loans, any loss suffered through noncollectability thereof would not amount to a business loss. Decision will be entered for the respondent.