**Newman E. JONES, Jr., and Peggy H. Jones, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 16379.

United States Court of Appeals
Sixth Circuit.

March 3, 1966.

Gayle Malone, Trenton, Tenn. (Gayle Malone, Trenton, Tenn., Barret Ashley, Dyersburg, Tenn., on the brief, Ashley, Malone & Ashley, Trenton, Tenn., of counsel), for petitioners.

Stephen H. Paley, Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, David O. Walter, Stephen H. Paley, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before PHILLIPS and EDWARDS, Circuit Judges, and CECIL, Senior Circuit Judge.

PER CURIAM.

This cause is before the Court on petition for review of a decision of the Tax Court of the United States. The facts were stipulated and they are fully stated in the findings of facts and opinion of the Tax Court. (23 T.C.M. 1613 (1964)) The decision of the Tax Court relates to the 1960 tax return of the petitioners, Newman E. Jones, Jr. and his wife Peggy H. Jones.

In 1954, Newman E. Jones, Jr., (Petitioner) inherited from his father Newman Jones, Sr., fifty percent of the stock of Newman Jones, Incorporated, (Corporation), organized in 1947, with paid in capital of ten thousand dollars ($10,000). At the same time, the petitioner inherited the sole ownership in an unincorporated business known as Jones Brothers Equipment Company (Equip-

ment Co.). The petitioners live in Dyersburg, Tennessee, and both businesses are conducted in that city.

The Corporation had a Ford Motor Company franchise and was engaged in the sales and service of Ford Motor vehicles. The Equipment Co. was engaged in the business of constructing industrial and commercial buildings. The Petitioner, upon his inheritance, became president of the Corporation and sole proprietor of the Equipment Co. Fifty percent of the stock of the Corporation was owned by the Petitioner's mother and brother.

The Corporation had experienced a successful operation until the latter part of 1955. At this time, it met with serious financial reverses and began an accelerated decline until it was sold in 1961. The Petitioner and the Equipment Co. began making advances of money to the Corporation in October 1955. On December 31, 1960, the net amount of these advances was $32,285.80. The Petitioner's father, prior to his death in 1954, had advanced to the Corporation $10,000 which was carried on its books as a note payable to Newman Jones, Sr., or to his estate. The Petitioner also inherited his father's interest in this note. Prior to May 31, 1955, the Corporation owed the Petitioner miscellaneous debts amounting to $656.-17. These two items plus the net outstanding balance of advances made after October 1955, amounted to $42,941.97, on December 31, 1960.

The Petitioner realized in 1956 that the Corporation would not be successful and that it would be necessary to sell it. He then initiated offers to sell but it was not until the latter part of 1960 that he entered into an agreement to sell the Corporation for $19,200. The assets were transferred on February 24, 1961. The amount realized from the sale was not sufficient to repay the Petitioner's advances and to pay many other creditors of the Corporation.

On their 1960 return, the petitioners claimed a business bad debt deduction in the amount of $31,771.64 for the partial worthlessness of the advances made to the Corporation. The deduction was disallowed and a deficiency of $11,582.68 was assessed against them. They brought an action in the Tax Court for determination of the tax.

The Petitioner claimed that these advances were made to the Corporation in order to maintain his credit so that he could borrow money from the banks to finance his successful operation of the business of the Equipment Co. Some of the advances made by the Petitioner to the Corporation were evidenced by notes. Only one of these notes bore interest. Some of them were payable on demand and most of them had no maturity date. In some cases the notes were not issued simultaneously with the advance of money.

The question presented to the Tax Court was whether the advances made by the Petitioner and the advance of $10,000 made by his father were in fact an indebtedness of the Corporation or whether they were contributions to its capital. This was a question of fact. The Tax Court found that all of these advances were contributions to capital and that they did not create a valid debt. We agree with this conclusion and we are bound by it unless it is clearly erroneous. Commissioner v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218.

In support of its conclusion, the Tax Court said in its opinion:

"This case presents nearly a classic example of contributions to the capital of a corporation disguised as loans. We have here the rather casual issuance of formal promissory notes representing advances made by petitioner. These notes (except for one out of 15) do not bear interest. They either have no stated maturity date or are payable on demand. They are issued by a payor to a payee who was in control of the payor at the date of their issuance. They are not secured by collateral. No interest is shown to have been paid on any of them. Repayment of advances made by petitioner was subordinated either specifically or prac-

tically to all other creditors of the corporation, even to petitioner's mother who was a minor stockholder.

"The most telling factor militating against petitioner's case is his own testimony to the effect he did not look to corporate earnings for repayment of his advances but rather to the proceeds of a possible sale of its assets."

 The decision of the Tax Court is based upon substantial evidence and sound reasoning. It is therefore affirmed.