Peter W. DeFELICE and Norma G. DeFelice, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 9235.

United States Court of Appeals
Tenth Circuit.

Nov. 20, 1967.

Before MURRAH, Chief Judge, and PHILLIPS and LEWIS, Circuit Judges.

PHILLIPS, Circuit Judge.

Peter W. DeFelice and Norma G. DeFelice, husband and wife, have filed a petition to review a decision of the Tax Court sustaining a tax deficiency in their income tax for the year 1958, determined and assessed by the Commissioner, and sustaining the denial by the Commissioner of an income tax deduction claimed by them in their return for the year 1959.

Prior to 1958, Peter was the sole owner and the operator of an advertising agency offering its services in the commercial and political fields. Norma worked in the business as a bookkeeper, but performed no management functions. The business of the agency was carried on under the name of the DeFelice Advertising Agency.[1]

On October 1, 1958, Peter, Norma, and another entered into a subscription and purchase agreement by which Peter agreed to transfer all the assets of the Advertising Agency to a corporation to be formed by them under the name of DeFelice Advertising Agency, Inc.[2] The agreement provided that the Corporation would assume all accounts payable and other liabilities of the Advertising Agency.

On or about October 1, 1958, the Corporation was formed, the assets of the Advertising Agency were transferred to the Corporation, and it assumed and thereafter paid the liabilities of the Advertising Agency existing at the time of such transfer and assumption.

Immediately after such transfer and assumption, Peter was in control of the Corporation within the meaning of § 368(c) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 368.

The value of the assets transferred and the amount of the liabilities assumed,

Charles Dunn, Tulsa, Okl., for petitioners.

Harris Weinstein, Atty., Dept. of Justice (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Meyer Rothwacks and Karl Schmeidler, Attys., Dept. of Justice, on the brief), for respondent.

---

1. Hereinafter called the Advertising Agency.

2. Hereinafter called the Corporation.

as shown on the books of the Advertising Agency and as carried over onto the books of the Corporation, were as follows:

Assets Transferred

| | | |
|---|---|---|
| Cash | $ 5,309.69 | |
| Miscellaneous | 165.29 | |
| Accounts receivable | 14,400.26 | |
| Furniture & Fixtures (less reserves) | 2,573.08 | |
| Automobiles | 6,216.00 | |
| Total Assets Transferred | | $28,664.32 |

Liabilities Assumed

| | | |
|---|---|---|
| Accounts payable | $30,331.16 | |
| Advance payments | 9,375.00 | |
| Loans | 6,263.17 | |
| Notes | 6,805.44 | |
| FICA tax | 37.16 | |
| Withholding tax | 256.90 | |
| Total Liabilities | | $53,068.83 |

The Advertising Agency had done an excellent job of handling the advertising of a candidate who ran for and was elected Governor of Oklahoma in a recent campaign. Peter believed, because of those facts, that the Advertising Agency had acquired an enhanced good will that would result in a rapid increase of its business, particularly from the State of Oklahoma and its agencies, and that such enhanced good will would inure to the Corporation. Peter also contemplated that a branch office would be established in Oklahoma City. The Corporation did establish such a branch office. However, the Corporation did not enjoy the large increase in business expected by Peter; the Oklahoma City office was unsuccessful; and the financial condition of the Corporation so deteriorated that on September 1, 1961, it filed a voluntary petition in bankruptcy.

The taxpayers filed joint income tax returns for the years 1958 and 1959. They did not report on their 1958 return any gain realized from the transfer of the assets to and the assumption of the liabilities by the Corporation.

The Commissioner found the amount of the liabilities assumed exceeded the total adjusted basis of the assets transferred in the amount of $24,404.51 and held that under the provisions of § 357 (c) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 357, $1,620.46 of that amount should be treated as a gain realized by the taxpayers from the sale or exchange of capital assets, and the remainder of $22,784.05 as ordinary gain realized by the taxpayers from the sale or exchange of property.

The schedules attached to the petition in bankruptcy, which were signed by Peter, did not list any debts which the Corporation owed on October 1, 1958. There was no proof that Peter paid any of the indebtedness assumed by the Corporation.[3]

Shortly before the case came on for hearing by the Tax Court, Peter prepared a financial statement, which he

---

3. The Tax Court found that it is a fair assumption that the Corporation paid the debts of the Advertising Agency assumed by it.

testified showed his financial condition and net worth on October 1, 1958, immediately after the transfer of assets to and assumption of liabilities by the Corporation.[4] It showed a net worth of $4,436.60.

Among the $28,664.32 of assets transferred to the Corporation was an account receivable owing to the Advertising Agency by the Hollis Furniture Company. The subscription and purchase agreement provided:

"* * * that the account of Hollis Furniture Company which is of doubtful value due to the fact that an assignment for benefit of creditors has been made, is to be returned to Peter W. DeFelice at the end of the first fiscal year if an amount equal to fifty percent of said account has not been paid. * * *"

Peter testified that the reason for incorporating such provision in the agreement was that he anticipated selling stock in the Corporation and such debt "wouldn't be a very good asset."

The taxpayers claimed a deduction of the amount of the Furniture Company account receivable, viz., $5,922.18, as a bad debt in their income tax return for 1959. The Commissioner denied the deduction.

Unsuccessful attempts had been made by Peter to collect such account receivable before October 1, 1958; there was no proof that the account receivable had any value on December 31, 1958; and there was no proof that the account receivable was in fact ever retransferred by the Corporation to Peter or that he reimbursed the Corporation for the amount thereof.

The Tax Court sustained the Commissioner on the ground that the taxpayers did not prove the account receivable became worthless in 1959, and did not prove a reassignment of such account receivable by Peter to the Corporation or any reimbursement of the Corporation by Peter therefor.

Section 351(a) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 351, in part here pertinent reads:

"§ 351. *Transfer to corporation controlled by transferor*

"(a) *General rule.*—No gain or loss shall be recognized if property is transferred to a corporation * * * by

4. The statement read:

"ASSETS

| | | |
|---|---|---|
| CAPITAL STOCK: | | |
| DeFelice Advertising, Inc. | 500.00 | |
| REAL ESTATE: | | |
| 1789 East 59 Street, Tulsa, Oklahoma | | |
| Residence—One-Half Interest | 14,500.00 | |
| TOTAL ASSETS | | $15,000.00 |

LIABILITIES

| | | |
|---|---|---|
| TAXES PAYABLE: | | |
| FICA | 280.47 | |
| REAL ESTATE MORTGAGE: | | |
| 1789 East 59 Street, Tulsa, Oklahoma | | |
| Residence—One-Half Interest | 9,668.85 | |
| NOTES PAYABLE: | | |
| F.H.A. Brookside State Bank | 614.08 | |
| NET WORTH | 4,436.60 | |
| TOTAL LIABILITIES | | $15,000.00" |

one or more persons solely in exchange for stock or securities in such corporation and immediately after the exchange such person or persons are in control (as defined in section 368(c)) of the corporation. * * *"

A similar provision was contained in § 112(b) (5) of the Internal Revenue Code of 1939. In decisions handed down prior to 1939 it was held that cancellation of a transferor's debt in the course of an otherwise tax-free reorganization would result in a *pro tanto* recognition of income to the transferor. This tended to lessen the number of business reorganizations. Since Congress regarded reorganizations as desirable, it sought to alleviate the results of such decisions by the enactment in the Internal Revenue Code of 1939 of certain provisions, which were carried over into the Internal Revenue Code of 1954 in § 357(a) and (b). Section 357 of the Internal Revenue Code of 1954 was amended by § 2 of the Act of June 29, 1956, c. 463, 70 Stat. 403.

As so amended, such § 357(a) and so much of (b) and (c) as are here pertinent read:

"357. *Assumption of liability*

"(a) *General rule.*—Except as provided in subsections (b) and (c), if–

"(1) the taxpayer received property which would be permitted to be received under section 351, 361, 371, or 374 without the recognition of gain if it were the sole consideration, and

"(2) as part of the consideration, another party to the exchange assumes a liability of the taxpayer, or acquires from the taxpayer property subject to a liability,

then such assumption or acquisition shall not be treated as money or other property, and shall not prevent the exchange from being within the provisions of section 351, 361, 371, or 374, as the case may be.

"(b) *Tax avoidance purpose.*—

"(1) *In general.*—If, taking into consideration the nature of the lia-

bility and the circumstances in the light of which the arrangement for the assumption or acquisition was made, it appears that the principal purpose of the taxpayer with respect to the assumption or acquisition described in subsection (a)—

"(A) was a purpose to avoid Federal income tax on the exchange, or

"(B) if not such purpose, was not a bona fide business purpose,

then such assumption or acquisition (in the total amount of the liability assumed or acquired pursuant to such exchange) shall, for purposes of section 351, 361, 371, or 374 (as the case may be), be considered as money received by the taxpayer on the exchange.

\* \* \* \* \* \*

"(c) *Liabilities in excess of basis.*—

"(1) *In general.*—In the case of an exchange—

"(A) to which section 351 applies, or

"(B) to which section 361 applies by reason of a plan of reorganization within the meaning of section 368 (a) (1) (D),

if the sum of the amount of the liabilities assumed, plus the amount of the liabilities to which the property is subject, exceeds the total of the adjusted basis of the property transferred pursuant to such exchange, then such excess shall be considered as a gain from the sale or exchange of a capital asset or of property which is not a capital asset, as the case may be.

"(2) *Exceptions.*—Paragraph (1) shall not apply to any exchange to which—

"(A) subsection (b) (1) of this section applies, * * *.

\* \* \* \* \* \*

There was no counterpart of subsection (c) of § 357, supra, in the Internal Revenue Code of 1939. Clearly, subsection (c) was intended to provide a further exception to the general rule set forth in § 351(a).

The case was tried on the theory that the income realized from the transaction by Peter was the amount his assets exceeded his liabilities immediately after the transfer of the assets to and the assumption of the liabilities by the Corporation, which, as shown by Peter's financial statement, which he introduced in evidence, was $4,436.60. However, counsel for the taxpayers now assert that § 357(c), supra, does not apply, because Peter was insolvent immediately before the subscription agreement was entered into and was insolvent immediately after the transfer of the assets to and the assumption of the liabilities by the Corporation. They attempt to avoid the fact that the statement, itself, showed a net worth by asserting that a one-half interest in the family residence, shown as an asset in the financial statement, was exempt from the claims of creditors and therefore should be eliminated from the statement. They neglect, however, to consider that the residence was subject to the lien of a mortgage, and that the mortgage debt was the principal liability set forth in the statement.

The Tax Court found, and we agree, that the taxpayers failed to prove that Peter was insolvent immediately after the transfer of the assets to and the assumption of the liabilities by the Corporation.

Peter held a note for a loan he made to one Quebo Perna in 1958. Perna made some payments on the loan. Later, when Perna defaulted, Peter obtained a judgment against him for the balance due on the note, in the amount of $3,900, which included interest, attorney's fees and costs. The taxpayers claimed $2,550 of the debt as a bad debt deduction in 1959, but Peter wholly failed to establish that it was not an asset in 1958.

In May or June of 1958, Peter sold a former residence which he had converted into a rental property in 1957 and had rented for 10 months. He gave no explanation of why the proceeds thereof were not in anywise reflected in his financial statement of October 1, 1958.

The Corporation was a going concern in October, 1958, and thereafter, and both taxpayers received a substantial salary from the Corporation, yet Peter's financial statement does not set forth any amount as cash on hand or bank deposits. Surely, he was not entirely bereft of current funds on October 1, 1958.

Those unexplained omissions from the financial statement warranted the Tax Court in rejecting it and finding that the evidence did not establish that Peter was insolvent immediately after the transfer of assets and assumption of liabilities.

As provided in the subscription and purchase agreement, and as it was carried out, in consideration for the transfer of the assets of the Advertising Agency, which in fact were assets belonging to Peter, the Corporation did pay the debts owing by the Advertising Agency on October 1, 1958, which were in fact debts owing by Peter, himself. Hence, the assumption of the debts by the Corporation and the latter's payment thereof insured to the benefit of Peter.

Had the Corporation agreed to pay and had it thereafter paid to Peter $53,068.83, and had Peter, himself, used such amount to pay the debts of the Advertising Agency which he personally owed, could there be any doubt that Peter realized income? It seems to us that there is no difference in substance in the Corporation agreeing with Peter to pay and paying for him his debts in the amount of $53,068.83, and in the Corporation agreeing to pay such amount to Peter and he in turn using it to pay his debts in that amount. In each case, the determination of how and for what purpose the consideration agreed to be paid and paid should be used would be Peter's and the payments would inure to his benefit.

The cases relied on by the taxpayers [5] are debt forgiveness or debt cancellation

5. Dallas T. & T. Warehouse Co. v. Commissioner of Int. Rev., 5 Cir., 70 F.2d 95; United States v. Hall, 10 Cir., 307 F 2d 238; Haden Co. v. Commissioner of Internal Revenue, 5 Cir., 118 F.2d 285.

**710**

cases, where a creditor accepted from his debtor a payment in cash of less than the debt or accepted property from his debtor of a value less than the debt and forgave or cancelled the balance of the debt.

Here, Peter transferred certain property to the Corporation and the latter, in consideration of such transfer, agreed to pay and did pay certain debts of Peter, which aggregated more than the value at which the Advertising Agency carried the property transferred on its books. No part of the debts was cancelled or forgiven. They were paid in full by a third party as consideration for property transferred to it by Peter.

Hence, we are of the opinion that a literal application of § 357(c), supra, in the instant case does not run afoul of the teaching of Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521.

As stated above, Peter tried his case in the Tax Court on the theory that his gain should have been limited to the excess of his assets over his liabilities immediately after the transfer of the assets to and the assumption of the liabilities by the Corporation. Whether the gain realized by Peter should have been so limited, we need not decide, and we express no opinion with respect thereto. In order for Peter to make out a case on that theory, he would have had to establish that such excess was less than $24,-404.51, the amount determined by the Commissioner. Peter relied on his financial statement, which he introduced in evidence, which showed an excess of $4,-436.60, but the Tax Court found there were substantial items omitted from the assets in such statement. The amount of such omitted items could not have been determined by the evidence introduced before the Tax Court and it was not required to guess with respect to a fact which Peter, to support his theory, should have proved, but did not.

With respect to the deduction of the Hollis Furniture Company account receivable by the taxpayers in 1959, it is

sufficient to say that the Tax Court found that there was no proof that such account had been retransferred by the Corporation to Peter or that he reimbursed the Corporation for the amount thereof, so that the account receivable belonged to Peter in 1959, and that there was no proof that the account receivable had not become worthless on or before December 31, 1958, or that it became worthless in 1959. Those findings were supported by substantial evidence and are not clearly erroneous and are therefore binding on this court.[6]

Accordingly, we affirm the decision of the Tax Court.

6. Jones v. C. I. R., 6 Cir., 357 F.2d 644, 645; McGowan v. C. I. R., 7 Cir., 347 F.2d 728, 729.