HAROLD W. HARDY and KAY R. HARDY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hardy v. Commissioner
Docket No. 2368-71.
United States Tax Court
T.C. Memo 1972-230; 1972 Tax Ct. Memo LEXIS 27; 31 T.C.M. (CCH) 1130; T.C.M. (RIA) 72230; November 16, 1972, Filed R. T. Baker, for the petitioners. Frederick W. Krieg, for the respondent. BRUCE MEMORANDUM FINDINGS OF FACT AND OPINION BRUCE, Judge: The Commissioner determined a deficiency in the petitioners' 1969 income tax in the amount of $25,208.12. The sole issue is whether Harold W. Hardy Supermarket Co., Inc., a Subchapter S corporation wholly owned by Harold Hardy, is entitled to a bad debt deduction in 1969 for $46,241.89 advanced to Louisville Composition Products Co., Inc. The question of the amount allowable as a medical deduction will depend upon the resolution of this question. FINDINGS OF FACT Some of the facts have been *28 stipulated, and the stipulation of facts, together with the exhibits attached thereto, are incorporated by reference. The petitioners, Harold W. Hardy and his wife Kay R. Hardy, resided in Bullitt County, Shepherdsville, Kentucky, at the time the petition was filed. They filed their joint income tax return for 1969 with the director, internal revenue service center, central region, Cincinnati, Ohio. Inasmuch as Kay R. Hardy is a party hereto solely because she filed a joint return with her husband, Harold Hardy will hereinafter sometimes be referred to as petitioner. Harold W. Hardy Supermarket Co., Inc., is a small business corporation. The business was incorporated on April 1, 1956, and has a fiscal year ending March 31. The election to be taxed under the provisions of Subchapter S was made on or about April 1, 1966. Harold Hardy was the sole shareholder and president of Supermarket and made all decisions for the company. Supermarket was engaged in the retail sale of groceries. In addition to this retail business, Supermarket owned stocks, bonds, and real estate. It also owned a funeral home building and at one time invested in another grocery store. Louisville Composition *29 Products Co., Inc., was a corporation whose business was the production and sale of plaster advertising art. Alfred Bertoli was an industrial artist and chief executive officer of Louisville Composition. He would create the company's advertising displays and plan the production of these items. Originally, the stock of the company was owned equally by Alfred Lena and Florinda Grisanti. Sometime prior to March 14, 1963, Alfred Bertoli purchased Alfred Lena's stock. As of March 14, 1963, Bertoli still owed Lena $2,400 of the purchase price. Also, as of that date, Grisanti had died leaving his interest to his wife, Maude. During this time, Winston Hardy, son of Harold Hardy, married the daughter of Alfred Bertoli. Winston was asked if he would like to invest in Louisville Composition, and Harold provided him the money for that purpose. On March 14, 1963, an agreement was entered into by Maude Grisanti, Alfred Lena, Alfred Bertoli and Winston Hardy. Pursuant to this agreement, Alfred Lena accepted $1,000.00 in settlement of Bertoli's debt of $2,400.00. Also Maude Grisanti sold her stock to Winston Hardy and Alfred Bertoli in consideration for $1,000.00 and an agreement to save her and *30 the estate of Florinda Grisanti harmless from any claims that Louisville Composition might have against her or the estate. The parties have stipulated that at some time subsequent to March 14, 1963, all of the stock of the company was held in the name of Winston Hardy. The money provided to Winston by Harold was never repaid and is not involved in this proceeding. The nature of Winston's service to the corporation is not explained in the record. He did, however, have the title of president. In any event, he remained in the employ of the company about 6 months and then left for California. He was not active in the management of the company after 1963. The company's income tax return for 1965 indicates that Winston was paid for 1 week's work that year. Harold Hardy was vice president of Louisville Composition in name only. He was not active in the company and had no duties. He received no salary or compensation of any type from the business. Through 1963, Louisville Composition employed a manager who arranged contracts with various companies which would buy the advertising displays. After 1963, he left the company to go into business for himself and took some of the clients with *31 him. The year 1963 was the only year that the company made a profit. From 1961 through 1968 the profits and losses of the company were as follows: 1961
($11,209.70)
1962
( 12,845.89)
1963
22,724.72
1964
( 19,476.39)
1965
( 14,553.02)
1966
( 2,585.90)
1967
No record
1968
No record
The 1966 income tax return for Louisville Composition shows as assets: buildings and other fixed depreciable assets with an original book value of $24,658.71 and a depreciated value of $1,264.45; and land with a book value of $5,000.00. The questioned advances to Louisville Composition began in August, 1965. Money was transferred periodically for approximately 2 years. On April 11, 1967, the recipient corporation executed a demand promissory note to Supermarket in the amount of $28,983.21. This note was included in Supermarket's claim which was filed against the assignee of Louisville Composition on May 15, 1969, and purported to represent the sum of the previous advances plus unpaid interest, as follows: [1]
*32 Computed
Amount
Interest to
Transferred
4/11/67
Total
Aug. 9, 1965
$ 2,000.00
$ 200.60
$ 2,200.60
Sept. 16, 1965
3,000.00
282.50
3,282.50
Oct. 7, 1965
1,000.00
90.66
1,090.66
Jan. 6, 1966
810.22
62.44
872.66
Jan. 6, 1966
1,367.39
103.69
1,471.08
Jan. 14, 1966
1,216.98
90.66
1,307.64
Feb. 9, 1966
1,915.45
134.72
2,050.17
Mar. 4, 1966
1,000.00
66.17
1,066.17
Mar. 19, 1966
1,000.00
68.66
1,068.66
Mar. 19, 1966
1,440.25
98.88
1,539.13
Apr. 11, 1966
1,591.00
95.46
1,686.46
Apr. 22, 1966
1,000.00
58.16
1,058.16
Apr. 28, 1966
1,000.00
57.18
1,057.18
May 13, 1966
1,000.00
54.67
1,054.67
June 3, 1966
1,000.00
51.33
1,051.33
June 23, 1966
1,000.00
49.99
1,049.99
July 5, 1966
1,000.00
46.00
1,046.00
Dec. 30, 1966
1,000.00
16.83
1,016.83
Feb. 9, 1967
1,000.00
10.33
1,010.33
Mar. 23, 1967
1,000.00
2.99
1,002.99
Apr. 11, 1967 2,000.00
2,000.00
Total
$27,341.29
$1,641.92
$28,983.21
Subsequent to April 11, 1967, other amounts were advanced to Louisville Composition by Supermarket. Those transactions are documented by demand promissory notes to Supermarket as follows: Principal Amount
Date of Note
of Note
April 21, 1967
$1,000.00
April 27, 1967
2,000.00
March 29, 1968
2,000.00
March 20, 1969
3,025.00
*33 No principal or interest has ever been paid by Louisville Composition to Supermarket on any of the advances. Supermarket received no security for its advances. Prior to these advances, Supermarket made no loans. In addition to the above advances, Louisville Composition obtained two bank loans, one on January 6, 1969, from First National Bank of Louisville in the amount of $1,100.00 and the other on March 19, 1969, from Bullitt County Bank in the amount of $9,669.90. The notes for both loans were signed by Alfred Bertoli and Harold Hardy. It is not clear whether they signed in their individual capacities or as officers of Louisville Composition. These notes, together with accrued interest aggregating $105.70, were paid by Supermarket on May 9 and May 8, 1969, respectively. Also during the years involved, Supermarket periodically advanced money to Louisville Composition to allow that company to meet certain expenses such as the payroll. These amounts were repaid with interest within a week or two and are not part of the questioned transfers. Except for the periodic advances, Supermarket and Louisville Composition had no business dealings. Supermarket maintained no records of *34 the transfers involved here and no interest was accrued on its books. On April 15, 1969, Louisville Composition assigned all of its real and personal property to F. Richard Holzknecht, assignee, in trust for liquidation and distribution to creditors of Louisville Composition. On May 15, 1969, Supermarket filed a claim against the assignee listing the above advances, plus interest, and including the amounts of the bank loans, plus interest, which Supermarket paid. On April 30, 1970, the assignee was authorized by the Jefferson County Court to sell Louisville Composition's real property for $15,500.00. The record does not disclose the distribution of the proceeds. Supermarket deducted on its 1969 income tax return the principal amounts of the various advances and the total amounts which Supermarket paid on the two bank loans. Respondent disallowed the deduction. OPINION The sole question is whether the Commissioner correctly determined that Supermarket, a Subchapter S corporation, is not entitled to a bad debt deduction for the amounts advanced to Louisville Composition. A Subchapter S corporation is relieved of the corporate income tax by statute, and its income is taxed to *35 the shareholders. Section 1371, et seq. [2] The disallowance of the deduction for Supermarket increased the corporation's income and thereby increased the income of petitioner. This, of course, resulted in a deficiency in the amount of income taxes paid by petitioner in 1969. In a statement attached to the statutory notice of deficiency, respondent explained the disallowance of the claimed deduction as follows: it has not been established that a debtor-creditor relationship was intended at the time the monies were advanced; the debt did not have value when created; there was no reasonable expectation of repayment when the monies were advanced; no interest was ever received, nor was any accrued. Respondent also contends that the advances in question were not proximately related to Supermarket's business. In regard to the two bank loans to Louisville Composition, respondent maintains that the requirements for a bad debt deduction are lacking. Petitioner asserts that the advances were made for business reasons, were made when Louisville Composition was solvent, were supported by demand notes, *36 and thus were bona fide debts. Section 166(a) [3] of the Internal Revenue Code provides, in general, for a deduction for any debt which becomes worthless within the taxable year. Treasury Regulations 1.166-1(c)[4] requires that the debt be a bona fide one which arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money. Gifts and contributions to capital are not debts. The question whether an advance constitutes a valid loan is a question of fact. Jones v. Commissioner, 357 F. 2d 644 (C.A. 6, *37 1966), affirming a Memorandum Opinion of this Court. A resolution of the question requires an examination of all the surrounding facts and circumstances; no single factor is conclusive. Road Materials, Inc. v. Commissioner, 407 F. 2d 1121 (C.A. 4, 1969), remanding for other reasons a Memorandum Opinion of this Court. In determining whether a particular advance is in reality a loan, courts have looked to such factors as: the name given to the writing evidencing the claimed obligations, the presence or absence of a maturity date of the obligation, the right to enforce the payment of principal and interest, entries on the books of the parties, a status equal to or inferior to that of regular corporate creditors, the alleged debtor's ability to obtain financing from independent lending institutions, the existence of a reasonable expectation of repayment, and the intent of the parties. Smith v. Commissioner, 370 F. 2d 178 (C.A. 6, 1966), affirming a Memorandum Opinion of this Court. O. H. Kruse Grain & Milling v. Commissioner, 279 F. 2d 123 (C.A. 9, 1960); Gilbert v. Commissioner, 262 F. 2d 512 (C.A. 2, 1959). Petitioner, of course, *38 has the burden of demonstrating that the advances were loans. Rule 32, Tax Court Rules of Practice, Smith v. Commissioner, supra. Here, the taxpayer points to the existence of the demand notes and asserts that the advances were made for a business purpose. He testified that he thought of the advances as a "business proposition." After considering all the evidence, we conclude that petitioner has not established by competent evidence that the advances by Supermarket to Louisville Composition were loans or otherwise constituted bona fide debts. Petitioner testified that the first advances to Louisville Composition were made in August, 1965. At that time, Louisville Composition was in a precarious financial position. It had lost money in 3 of the 4 previous years. At the end of 1964, its earned surplus account showed a deficit of $18,661.19. By August of 1965, it was well into another loss year. Such a situation would seem to demand care on the part of a creditor, yet here the usual creditor safeguards are absent. Supermarket did not act like a normal creditor. Harold Hardy testified that he never saw the financial records of Louisville Composition; he was not aware of what assets *39 the company owned or of their values. Supermarket maintained no records of the transaction and accrued no interest on its books. While petitioner stated that Winston pledged Louisville Composition's stock as collateral for the advances, we find no document evidencing when or in what manner this was supposedly done. We conclude that Supermarket received no security for its advances. Nor did Louisville Composition treat the advances as normal debts. It made no payments to Supermarket either of principal or of interest from August 1965 through April 1969 when it assigned its property for the benefit of creditors. Also, none of the books of the company are in evidence, and we cannot determine from the balance sheet accompanying the company's tax returns that the advances were considered as loans. The advances by Supermarket continued while the recipient continued to lose money. By the end of 1966, Louisville Composition's earned surplus account showed a deficit of $35,800.11. Records for 1967 and 1968 are not in evidence. In view of the financial condition of the advertising company, we conclude that Supermarket had no reasonable expectation of recovering its advances. It is axiomatic *40 that absent such reasonable expectation, no debt exists. C.M. Gooch Lumber Sales Co., 49 T.C. 649 (1968), remanded for entry of decision in accordance with compromise agreement of the parties, 406 F. 2d 290 (C.A. 6, 1969); Wilfred J. Funk, 35 T.C. 42 (1960). As noted above, Louisville Composition was in a precarious financial position when the first advances were made. The evidence indicates that 1963 was the only year in which the advertising company showed a profit. The advances began in August, 1965, the second loss year after 1963. Harold testified that the first advances were made to keep the business in operation. He further stated that he considered the potential of the business to be good because a manager was accumulating contracts and because each contract could be highly profitable. But the manager referred to left Louisville Composition after 1963 and started his own business and took customers with him. With no more evidence of Louisville Composition's prospects than Harold's uninformed assertions and self-serving projections, we are unable to agree that the company displayed a reasonable chance of success. We think it should have *41 been apparent that Supermarket had no reasonable expectation of recovering its money when the advances began. Harold also contends that the advances were for a business purpose. The record does not support this contention. And as hereinbefore found, there is no evidence that Supermarket and Louisville Composition had any business dealings other than the advances. It does not appear that Supermarket was in the business of loaning money. Petitioner points to the demand notes as support for his position. But the notes are, of course, merely one of the indicia to be examined, and the substance of the transaction, not its form, is controlling. Smith v. Commissioner, supra; Jones v. Commissioner, supra.While the advances began in 1965, the first demand note documenting those transactions was dated April 11, 1967. Petitioner's testimony suggests that each of the early advances was represented by a note. But those notes are not in evidence, and there is no explanation for their absence. Also there is no adequate explanation of why the later note was substituted for the earlier ones. With such incomplete and inadequate explanations, we cannot conclude that any *42 notes existed prior to April 11, 1967. Consequently, petitioner's position is not bolstered by the presence of the more recent demand notes. It has not been established that any notes existed until 1967, and this fact further indicates that the advances never attained the status of loans. Considering all these factors, we are impelled to the conclusion that from the beginning of the advances by Supermarket, there existed no real debtor-creditor relationship between the parties to the transaction. Unavoidable is the conclusion that in reality, Louisville Composition had no unqualified obligation to repay the advances. Harold and Bertoli expected that Supermarket would recover its money only if the advertising business prospered. Accordingly, no deduction under section 166 is permissible for the advances. With regard to the amounts which Louisville Composition borrowed from the two banks, it is clear that Supermarket is not entitled to a bad debt deduction. Supermarket did not sign the notes given to the banks. When Supermarket assumed the obligations and paid the two bank notes, the necessary elements for a bad debt deduction were not created. Presumably, when Supermarket paid the *43 loans, either the endorsers of the notes or Louisville Composition became obligated to repay Supermarket. If the endorsers became obligated, then no deduction would be proper because petitioner, at least, was solvent, and the obligation to Supermarket was not worthless. If only Louisville Composition became obligated, then no deduction would be proper because Supermarket would not have acquired a bona fide debt. In view of Louisville Composition's insolvency, the obligation to repay Supermarket would have been worthless when created. Thus no deduction under section 166 is permissible for the payments on the bank loans. Considering all of the facts and circumstances presented, we hold that Supermarket is not entitled to a bad debt deduction for any of the amounts advanced to or paid on behalf of Louisville Composition. Consequently, the deficiency determined by respondent against the petitioner is sustained. Decision will be entered for the respondent. Footnotes
1. No records or documents of Supermarket or Louisville Composition have been submitted to establish that the advances were made as stated in the claim presented to the assignee.↩
2. All statutory references are to the Internal Revenue Code of 1954, as amended.↩
3. That section provides, in part: (a) GENERAL RULE.-- (1) Wholly Worthless Debts.--There shall be allowed as a deduction any debt which becomes worthless within the taxable year. ↩
4. That Regulation reads, in part: (c) Bona fide debt required. Only a bona fide debt qualifies for purposes of section 166. A bona fide debt is a debt which arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money. A gift or contribution to capital shall not be considered a debt for purposes of section 166↩. * * *