**Martin C. McGOWAN and Willie Gay McGowan, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 14998.**

United States Court of Appeals Seventh Circuit.

June 29, 1965.

Rehearing Denied July 19, 1965.

Duffy, Circuit Judge, dissented.

Max A. Reinstein, Chicago, Ill., for petitioners.

Louis F. Oberdorfer, Asst. Atty. Gen., Martin T. Goldblum, Lee A. Jackson, David O. Walter, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before DUFFY, SCHNACKENBERG and SWYGERT, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Martin C. McGowan, taxpayer, and Willie Gay McGowan, his wife, petitioners, seek a review of a decision of the Tax Court of the United States involving their income tax returns for the years 1957, 1958 and 1959.[1]

The Tax Court made findings of fact, including, by reference, facts stipulated by the parties.

From these facts, the following appears:

Taxpayer had been for 30 years an official of General Motors Corporation, when he retired on June 30, 1957. For many years prior to his retirement he had also been a hunter and sportsman and was engaged in big game hunts in the United States, Canada, Alaska and Africa. Upon returning in 1952 from his first African safari, he made plans to return to Africa after his retirement to make his own films. He thereafter enrolled in photography classes.

Upon his return from the 1952 safari, he began showing his hunting films to various audiences without fee. He then became known as a big game hunter and made a charge for presenting his films, generally to employee meetings held by various suppliers of his former employer.

1. The Tax Court's decision upheld deficiencies as follows: For 1957, $13,310.-55, for 1958, $1850.35, and for 1959, $4704.07.

On these occasions he was usually honored by a conspicuous seat at the head table.

In 1954 he joined the Adventurers Club and in 1956 the Shikar Safari Club. He became acquainted with other big game hunters. His activities in 1957 included a safari in French Equatorial Africa, a photographing trip to the Johannesburg area, and three safaris in East Africa. On one of these trips, his elder son accompanied him for pleasure.

In the fall of 1957 taxpayer toured and photographed various sections of India and in December was in a 25-day tiger hunt there. During the second and third weeks of December he and his younger son photographed the Far East, from India to Bangkok, to Hong Kong and on to Tokyo.

During 1959, taxpayer made a return trip to Alaska and another African safari.

During the tax years, when he presented the films showing his adventures, he would address the audiences and answer questions.

In 1958, one of taxpayer's films was telecast as a part of the series entitled "Bold Journey."

While he did not advertise in 1957, he did in 1958, mailing out a form letter and brochure to schools and other organizations.

In 1957 taxpayer presented his films eleven times. Six of the showings produced fees totaling $900 and the other five presentations were without charge. Of the aggregate lecturing proceeds in 1957, $800 was contributed by suppliers of his former employer. Such suppliers contributed the major portion of the fees he received in 1958 and 1959, which totaled $2365.

For the taxable years involved here, taxpayer deducted from his income all safari and traveling expenditures which went into the production of his films, as well as the cost of processing them.[2] By deducting from these expenditures his reported income from his lecture activities, he claimed losses, as follows:

1957 —$28,627.87
1958 —  6,399.33
1959 — 12,177.56

However, the Tax Court, by its decision, found that taxpayer's activities were merely a continuation of his lifelong hobby and that he failed to establish that he was engaged in carrying out the trade or business of lecturing on big game hunting adventure films, with the intent of earning a profit during the taxable years 1957, 1958 and 1959. The court's decision was for respondent.

■ Our appellate review of these determinations is quite restricted. The findings of the Tax Court must stand unless clearly erroneous. 28 U.S.C.A. rule 52(a). There is evidence in the record to support the findings of the Court and, on the entire evidence, we cannot say that we are left with the definite and firm conviction that a mistake has been committed. Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 290, 291, 80 S.Ct. 1190, 4 L.Ed.2d 1218. This same rule applies to such factual inferences as the Tax Court has drawn from the undisputed basic facts.

■ Therefore, applying the rule in Duberstein, we are in agreement, on the evidence in this record, that it cannot be said that the conclusion of the Tax Court was clearly erroneous. We, therefore, hold that the taxpayer failed to prove that he was engaged in a trade or business of lecturing for profit and therefore the record warrants the Tax Court's conclusion that he was merely pursuing his lifelong hobby.

For these reasons the decision of the Tax Court is affirmed.

Decision affirmed.

2.  1957    $29,500
    1958      8,100
    1959     12,800

DUFFY, Circuit Judge (dissenting).

In 1952, taxpayer realized that upon retirement from his position of trust with General Motors, his annual income would be reduced from $50,000 to $15,000. He decided to supplement his income by lecturing on films which he would make on big game hunts in Africa, Alaska and other places. He learned that professional big game hunters and lecturers earned as much as $18,000 a year.

In 1952 and 1953, taxpayer took courses in photography. He consulted with his instructors as to the type of equipment he would need for his purposes.

The primary factor in deciding the issues in this case is the matter of intent. Did taxpayer intend to engage in business for the making of a profit? In my view, the record in this case clearly establishes taxpayer's intent to film big game animals in various parts of the world and then to exhibit the films for profit during the course of lectures which he would give.

In 1957, taxpayer sent out many letters soliciting lecture engagements. Thereafter he sent out approximately 1500 brochures annually. These would be sent to sportsmen, clubs, PTA groups, churches and other organizations. In these advertising letters and brochures, the amount of his lecture fees was stated.

The majority makes some point that on one safari, taxpayer's youngest son accompanied him. However, the son was an expert photographer who greatly assisted his father on this trip. The record discloses that taxpayer would have had to pay $70 a day for the services of a photographer of similar competence.

During the years involved in this suit, taxpayer gave numerous lectures and received compensation from all but seven. He also was recompensed for his appearance on a television show in 1958.

It is true that taxpayer's lecturing venture was not profitable although he did realize a profit in 1963. "However, an occupation will not be excluded from the classification of business merely because it actually results in a loss instead of a profit." Vanderbilt v. Comm., 57 T.C.Mem.Dec. 917, 920.

In Doggett v. Burnet, 62 App.D.C. 103, 65 F.2d 191, at page 194, the Court of Appeals said: "We think a better test to be applied here is whether or not the person engaged in a legitimate enterprise shows a willingness to invest time and capital on the future outcome of the enterprise, whether it be successful or unsuccessful."

The majority opinion cites Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218. The Court there stated, page 291, 80 S.Ct. at page 1200—"A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." To me, the intent of the taxpayer was crystal clear. I have the definite and firm conviction that a mistake has been committed. I would reverse.