BETTE PATRICOF HOLLANDER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hollander v. Commissioner
Docket No. 4020-73.
United States Tax Court
T.C. Memo 1975-157; 1975 Tax Ct. Memo LEXIS 215; 34 T.C.M. (CCH) 718; T.C.M. (RIA) 750157; May 22, 1975, Filed A. Robert Teichner, for the petitioner. L. William Fishman, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined deficiencies in the amounts of $3,388.17 and $3,639.75 *216 in petitioner's Federal income tax for 1969 and 1970, respectively. The issues for decision are as follows: 1. Whether petitioner was engaged in a trade or business as an artist during 1969 and 1970 and, if so, whether she has substantiated her claimed business deductions. 2. Whether petitioner is entitled under section 214[1]/ to child care expense deductions for 1969 and 1970. 3. Whether petitioner suffered a deductible theft loss in 1970. FINDINGS OF FACT At the time her petition was filed, petitioner was a legal resident of New York City, New York. She filed timely income tax returns for 1969 and 1970 with the District Director of Internal Revenue for the Manhattan District of New York. In 1958, petitioner graduated from the University of Pennsylvania, College of Fine Arts, with a Bachelor of Fine Arts degree. For several years after her graduation from the University, she studied art in various private schools run by a Mr. Fogerty, Moses Soyer, and Leo Manzo. In the early 1960's, petitioner worked for the Downtown *217 Gallery and for Collier's Encyclopedia as an art reference researcher, from November 1969 to June 1970, for George Jensen, a retail store, doing public relations work, and beginning in late 1970 for the Metropolitan Museum in New York, as a craftsman doing art reproduction work. Her salary income amounted to $438.77 in 1969 and $1,713.55 in 1970. In addition to her income from employment, petitioner received alimony and child support from her former husband in the amount of $1,500 per month. During 1969 and 1970 and for several prior years, petitioner used part of the living room in her apartment as a studio in which she did painting and other artwork. During 2 consecutive summers in the early 1960's, petitioner exhibited her artwork at the Long Beach Island Art Foundation in Long Beach Island, New Jersey, but sold none of her works. During the period 1958 through 1968, she sold approximately 10 of her paintings at prices ranging from $100 to $170. The largest number of paintings sold in any 1 year during this period was 2. Petitioner did not keep any books, records of her expenditures (other than canceled checks), or a diary in connection with her artwork. She never employed an *218 agent to promote herself or the sale of her paintings. When she engaged an accountant to prepare her income tax return for 1968, she did not inform him of any income or expenses related to any art business. On her income tax return for 1969, petitioner reported no income from work as an artist but claimed deductions in the following amounts: Material and supplies
$ 280.13
Rent on business property
1,200.00
Legal and professional fees
335.00
Painting classes
260.00
Utilities
61.96
Telephone
314.98
Travel during summer months to
paint--12 days in Las Vegas: [1]/
Air fares
472.11
Hotels, lodging
257.18
Food, taxis, etc.
180.00
Child care--Re: Employment and
pursuit of employment--so Mrs.
Bette Patricof [i.e., peti-
tioner] can attend classes and
paint
695.80
Publications, books, and art
books
92.40
Entertaining, liquor, and gifts
169.34
Total
$4,318.90
On her income tax return for 1970, petitioner reported no income from work as an artist but *219 claimed deductions in the following amounts: Material and supplies
$ 302.18
Rent on business property
1,200.00
Legal and professional fees
250.00
Painting classes
260.00
Utilities
46.28
Telephone
367.49
Travel to Italy to paint and
visit galleries and art shows--
paid agency, includes air fares,
hotels, lodging, etc.
1,231.88
Publications, books, and maga-
zines
96.32
Entertaining, liquor, and gifts
234.96
Child care: Re employment and
pursuit of employment to allow
Mrs. Patricof [i.e., petitioner]
to attend classes and paint
739.40
Total
$4,728.51
During 1970, petitioner's apartment was broken into and a number of items were stolen. She immediately reported the thefts to the police, but nothing was recovered. She had no insurance coverage. The fair market value of the stolen items was as follows: Cash
$200
Bell and Howell movie camera
110
Television set
150
Hair dryer
30
Super 8 movie projector
150
Polaroid camera
100
Petitioner had purchased each of these items at a price in excess of these values. OPINION 1. The Trade or Business Issue
*220 The expenses petitioner incurred in connection with her art activities are deductible under section 162(a)[2]/ only if they were paid or incurred in carrying on a trade or business. The meaning of the deceptively simple words "trade or business"has been the subject of floods of litigation. The rule distilled from the decided cases is that expenditures are incurred in a trade or business only if they are prompted by a bona fide profit motive. Margit Sigray Bessenyey,45 T.C. 261, 273-274 (1965), affd. 379 F.2d 252 (2d Cir. 1967), cert. denied 389 U.S. 931 (1967); Porter v. Commissioner,437 F.2d 39, 40 (2d Cir. 1970), affg. a Memorandum Opinion of this Court; Lamont v. Commissioner,339 F.2d 377, 380 (2d Cir. 1964), affg. a Memorandum Opinion of this Court. The standard for deciding whether a taxpayer's activities constitute a trade or business was *221 stated in Hirsch v. Commissioner,315 F.2d 731, 736 (9th Cir. 1963), as follows: From the very import of Section * * * [162], it is clear that Congress intended that the profit or income motive must first be present in and dominate any taxpayer's "trade or business" before deductions may be taken. While the expectation of the taxpayer need not be reasonable, and immediate profit from the business is not necessary, nevertheless, the basic and dominant intent behind the taxpayer's activities, out of which the claimed expenses or debts were incurred, must be ultimately to make a profit or income from those very same activities. * * * Absent that basic and dominant motive, the taxpayer's activities, no matter how intensive, extensive or expensive, have not been construed by the Courts as carrying on a trade or business within the purview of Section * * * [162]. The issue is factual, and the ultimate finding depends upon all the facts and circumstances of each case. Morton v. Commissioner,174 F.2d 302, 303 (2d Cir. 1949). As we view the evidence, *222 it will not support a finding that petitioner engaged in art activities as a trade or business during 1968, 1969, and 1970, or during any other period. The only realistic inference from the entire record is that her artwork was a hobby which she has pursued without the necessary bona fide profit motive. During 1969 and 1970, petitioner was not without financial support. Divorced and living with her small child in an expensive apartment in New York City, she was receiving $1,500 per month from her former husband for the support of herself and her child. She was employed part-time, first as a public relations assistant for a retail store and later as a craftsman for the Metropolitan Museum. While petitioner claims that her artwork was necessary to supplement her other income, she did not pursue her artwork in a systematic, organized, businesslike manner. She kept no books or records (other than some canceled checks and a few invoices) of her expenses, nor is there evidence that she ever made a realistic appraisal of her potential for realizing a profit from painting. Francis X. Benz,63 T.C. 375, 385 (1974). She made no effort to establish any businesslike relationship *223 between her expenses and her income or anticipated income from art sales. For example, even though she realized income of only $175 in 1968 and no income at all in 1969 and 1970 from the sale of artwork, petitioner and her child took alleged business trips to Sun Valley, Idaho, in 1969, and to Italy in 1970, spending over $900 on the 1969 trip and over $1,200 on the 1970 trip. The credible evidence does not show that petitioner accumulated any inventory of artistic productions during 1968, 1969, and 1970, or, for that matter, over the 17-year period since she finished college. Petitioner offered no proof of any real efforts, directly or with the assistance of an agent, to sell her paintings or to exhibit them for sale. See McGowan v. Commissioner,347 F.2d 728 (7th Cir. 1965), affg. a Memorandum Opinion of this Court. True, she exhibited some of her paintings at the Long Beach Island Art Foundation during 2 consecutive summers in the early 1960's, long prior to the period here involved. But she sold none of the exhibited works, and the evidence does not show the exhibitions had a commercial hue. Also true, she testified that she had some of her paintings hanging *224 on the walls of her apartment and she invited "friends, and friends of friends would come, and we would have dinner, or just drinks, or tea, and it would be an exposure for my work" (for which she deducted $169.34 in 1969 and $234.96 in 1970 as "Entertaining, liquor, and gifts"). [3]/ These parties, however, were merely social gatherings, and there is no evidence that any of them led to sales of petitioner's artwork. Petitioner also testified that, although she sold no paintings in 1969 and 1970, she has sold approximately 10 of her paintings since finishing college in 1958 at prices ranging from $100 to $170, for a maximum total of $1,700 over the 17-year period. Yet she deducted as expenses of her alleged painting business $5,102.05 on her amended 1968 return, $4,318.90 on her 1969 return, and $4,728.51 on her 1970 return, a total of $14,149.46, compared with $175 reported as income from a sale during that period. This wide disparity between income and expenses *225 alone tends to show petitioner's activities were not profit-motivated, see Porter v. Commissioner,supra;Arthur H. Eppler, 58 T.C. 691, 697-698 (1972), affd. per order (7th Cir. Oct. 24, 1973); Henry P. White,23 T.C. 90, 94 (1954), affd. per curiam 227 F.2d 779 (6th Cir. 1955), cert. denied 351 U.S. 939 (1956), and that she did not have a good-faith expectation that she would realize a net profit over either a short term or a long term. The testimony shows quite clearly that, prior to August 1969, petitioner had not conceived of herself as being engaged in art as a business. At that time an accountant suggested that she file an amended income tax return for 1968, claiming that she was engaged in a trade or business as an artist. She did so, and she made similar claims for 1969 and 1970. The parties have stipulated that: "The petitioner claims to have been in the trade or business of an artist only during the taxable years 1968, 1969, and 1970." The situation is somewhat analogous to the facts in Wilson v. United States,179 Ct. Cl. 725, 748, 376 F.2d 280, 294 (1967), *226 where the evidence supporting a taxpayer's claim that she was in the business of being a writer for a 3-year period was much stronger than in the instant case, and the Court of Claims said: it would be incongruous to say that her writing was a "trade or business" during the 3-year period. On the contrary, the impression to be gained from the record as a whole is that Mrs. Wilson, for many years prior to 1958, wrote as a hobby, and that her writing activities during the period 1958-1960 were those of a literary hobbyist, rather than the efforts of a person engaged in writing as a "trade or business." Petitioner was not engaged in the trade or business of an artist during 1969 and 1970. 2. Child Care Expense
For 1969 and 1970, petitioner claimed, as part of her alleged art business expenses, deductions of $695.80 and $739.40, respectively, for child care expenses. The explanation on her 1969 return was "Re: Employment and pursuit of employment--so Mrs. Bette Patricof can attend classes and paint." The explanation on her 1970 return was similar to that on her 1969 return. The petition, petitioner's pretrial memorandum and brief, and most of her testimony also appear to treat *227 these outlays as part of the expenses of petitioner's alleged art business. And in explaining her expenditures, petitioner testified: "I can't paint with--and take care of a little child." Section 214(a), as in effect during 1969 and 1970, allowed as a deduction expenses (not to exceed $600 for one child) paid during the taxable year for the care of one or more "dependents" [4]/ if such care was for the "purpose of enabling the taxpayer to be gainfully employed." Whether the expenditure was incurred for such purpose is a factual issue which depends upon the facts and circumstances of the individual case. Sec. 1.214-1 (f)(4), Income Tax Regs.
*228 Since we have concluded that petitioner's painting and other art activities were a hobby rather than a business, they were not "gainful employment" as that term is used in section 214(a), and the child care expenses which enabled her to engage in such activities are therefore not deductible. During 1969, petitioner received salary income of $438.77 from George Jensen, a retail establishment, and a total of $1,713.55 in 1970 from George Jensen and the Metropolitan Museum. While petitioner's position is not clearly articulated, certain portions of her testimony indicate that she claims that the child care expenses were also incurred to enable her to be an "employee." However, the record does not show that the claimed child care expenses were incurred "for the purpose of enabling" petitioner to accept these part-time jobs. The notations on her income tax returns, described above, refer to her artwork, not her part-time employment. The amount of the claimed child care deduction exceeded her part-time employment income for 1969. Sec. 1.214(f)(4), Income Tax Regs. Moreover, petitioner testified that: "I structured my outside of the house employment in such a *229 way that it would correspond, time-wise, with what he [her child] was spending in school." The clear inference from petitioner's testimony and the documents in the record is that the child would have been sent to nursery school whether petitioner worked or not, and she obtained the parttime jobs to occupy the time her child was in school. Therefore, the nursery school and other child care expenses were not incurred for the purpose of enabling petitioner to accept the part-time jobs. 3. Theft Loss Deduction
Section 165(c) allows a deduction, subject to a $100 reduction, for losses arising from theft. Under sections 1.165-7(b) and 1.165-8(c), Income Tax Regs., the amount of a theft loss deduction is the lesser of (1) the fair market value of the stolen items immediately before the theft and (2) the taxpayer's basis (i.e., original cost) of the items. Respondent does not question the fact that petitioner suffered a theft loss in 1970. He quibbles only as to the estimated values. We think they are reasonable. Accordingly, petitioner is entitled to a theft loss deduction of $640 for 1970. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. /↩ All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted.
1. /↩ Although the return claims deductions for travel to Las Vegas, petitioner's testimony and the substantiating hotel bills indicate the travel was actually to Sun Valley, Idaho.
2. /SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * * * *↩
3. /The amounts claimed as deductions for these purposes were estimates, and petitioner offered none of the substantiating evidence required by sec. 274(d) or sec. 1.274-5, Income Tax Regs.↩
4. / The notice of deficiency determines that the full $18,000, rather than only $12,000 thereof, received from her former husband is taxable to petitioner as alimony. The parties have agreed that a district court judgment in a pending case for 1968 will control that issue in the instant case. If the disputed $6,00 was actually paid to petitioner for the support of her child, the child care expenses here in issue may have been paid by petitioner's former husband and the child may not have been petitioner's dependent as contemplated by section 214↩.