CHARLES H. CARTER and VIRGIE ANN CARTER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Carter v. Commissioner
Docket Nos. 9515-74, 10470-75.
United States Tax Court
T.C. Memo 1978-202; 1978 Tax Ct. Memo LEXIS 318; 37 T.C.M. (CCH) 859; T.C.M. (RIA) 780202; May 31, 1978, Filed William E. Coombs, for the petitioners. George W. McDonald and W. Winter Nesbitt III, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined deficiencies in petitioners' Federal income tax as follows: Docket No.
Year
Deficiency
9515-74
1971
$1,218.20
1972
2,788.97
10470-75
1973
8,444.98
The issues remaining for decision are whether petitioners: (1) were engaged in the trade or business of boat chartering and writing; (2) are entitled to any deduction for operating expenses of their yacht; and (3) may deduct tuition expenses paid by petitioner Virgie Ann Carter. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Petitioners, Charles H. Carter and Virgie Ann Carter (Charles and Vann), are husband and wife, whose residence was *320 in Honolulu, Hawaii, at the time of filing the petitions herein. They filed joint Federal income tax returns for the years 1971, 1972, and 1973 with the office of the Internal Revenue Service at Los Angeles, California. Charles is an attorney who practiced law in California from June, 1946, to August 1, 1971. Vann is an accredited school teacher in California, who taught school prior to her marriage to Charles in 1954 and worked as a substitute teacher during the 1954-55, 1955-56, 1959-60, 1965-66, and 1969-70 school years and as a resource teacher in the 1970-71 school year. A resource teacher is one who teaches enrichment courses as opposed to the traditional reading, writing, and arithmetic classes. Charles had built up a very successful law practice in Corona, California. His family maintained an expensive life-style and he had substantial investments in real estate and securities. He was concerned, however, that the demanding pace of his law practice was having an ill effect on his health and he wanted to get away from the pressures of his career. In 1966, petitioners began making plans to terminate their careers in Corona in the summer of 1971 and to sail around the *321 world. In connection with this trip, they had the intention of writing about their experience, making films, and chartering their boat. The Carters were experienced yachtsmen. Charles had served in the United States Navy during World War II. Petitioners began cruising with their children in the late 1950's. They first owned a seventeen foot Glasspar Power boat on which they took cruises of several days and up to four weeks, exploring Lake Mohave, Lake Havasu, Lake Mead, Catalina Island, and Puerto Citas on the Gulf of Lower California. Around 1965, they acquired a twenty-six foot power boat, the Miss Vann. Aboard this boat, they explored a newly formed lake above the Glen Canyon Dam, travelled 1,500 miles from San Filipe, Mexico, to LaPaz, Mexico, and back in 1966 and travelled 3,000 miles from Everett, Washington, to Skagway, Alaska, and back to Everett in 1965. The Carters made extensive preparations for their voyage. In May 1966, they purchased Quest, an oceangoing motor-sailer. Both Charles and Vann took courses in seamanship, piloting, and first aid. Charles took courses in weather and celestial navigation. He became a licensed amateur radio operator and a *322 master mariner entitled to operate uninspected vessels, limited to 350 tons for power and 100 tons for sail, on ocean waters and to carry up to six passengers for hire. The Carters and their three children took "shakedown cruises," sailing to San Francisco in 1967, Acapulco in 1968, and Hawaii in 1969. In further preparation for their voyage, the Carters purchased a 16mm Bolex camera, a film projector with sound, a slide projector, a portable typewriter and a dictating machine. Charles became an inactive partner in his law firm as of August 1, 1971. He retained the services of his legal secretary to type any manuscripts that he sent to her and to submit them to publishers on his behalf. The Carters donated their home to the YMCA and much of their furniture and personal items to the YMCA and St. John's Episcopal Thrift Shop. They arranged to have all their property, income, and expenses managed by Charles' legal secretary and an accountant. They moved aboard the Quest in the summer of 1971. On or about August 12, 1971, they and their three children set sail on their voyage, which was still in progress at the time of the trial. At the time of trial, Charles had completed *323 three manuscripts and was working on a fourth manuscript. After an extensive search for a publisher and substantial rewriting, Charles entered into a contract with Quatro Graphics Publishing Company of Seattle, Washington, in December 1976 for publication of the first two manuscripts as one book entitled A Family Goes to Sea. He also wrote an article entitled "Across the Tasman in Winter" which was sold to Sea Spray Magazine of New Zealand for $85 and published in February 1975. An article entitled "Trekking to Mount Everest" has been submitted to "Outdoor Life" but no response had been received at the time of trial. In accordance with arrangements made prior to their departure, Vann wrote a series of articles for the Corona Daily Independent, a daily newspaper. From July 1971 through May 1973, she received $5 for each of 27 articles; from August 1973 through November 1976, she received $7.50 for each of 36 articles. On an undeterminable date, she sold an article entitled "Climbing Mt. Fuji," to Woman's Weekly Magazine of Sydney, Australia, for $85. She has submitted to two publishers a book entitled A Sailing We Did Go. At the time of trial, one publisher had rejected *324 it and the other had not responded. Vann is also working on a cookbook of recipes from places they have visited and a children's book entitled Inkki Goes to Chopstick Land.
The Carters' attempts to make films were not profitable and such efforts were discontinued. At various ports of call, they advertised for paying crew and/or charters. On their 1971, 1972, and 1973 tax returns, petitioners reported the following income and expenses relating to their voyage on Quest:
1971
1972
1973
Gross receipts: Chartering [1]
$2,000.00
$ 900.00
$ 375.00
Articles
35.00
140.00
Teaching
94.00
Interviews
33.00
Total
$2,129.00
$ 933.00
$ 515.00
Expenses: Boat expenses
$3,619.00
$4,892.00
$10,578.00
Writing & film
expenses
154.00
836.00
679.00
Depreciation
3,713.00
8,290.00
9,513.00
Total
$7,486.00
$14,018.00
$20,770.00
Net Profit (Loss)
($5,357.00)
($13,085.00)
($20,255.00)
Those returns also reflected the following *325 amounts and sources of income: [2]
1971
1972
1973
Wages etc.
$ 3,168.65
Dividends (before $200 exclusion)
648.69
$ 527.95
$ 681.15
Interest
1,485.39
2,612.41
4,234.22
Income from law
practice
43,229.26
34,448.37
2,802.79
Net capital gain
5,372.76
339.89
10,493.36
Other income
12,859.19
33,194.26
27,163.66
Prior to the voyage, Vann arranged a course of study through LaVerne College, LaVerne, California, leading to a Master's Degree in Education. She paid tuition of $1,200 in 1971. In accordance with this plan, she studied schools in Micronesia and Japan and wrote papers for which she received credit. She also applied for substitute teaching jobs in Australia and Hawaii. In 1971, she earned $94 in Hawaii as a substitute teacher. [3] On June 6, 1976, she received a Master's Degree in Education. Other than as indicated, Vann has not taught *326 since the 1970-71 academic year. ULTIMATE FINDING OF FACT Neither of petitioners was carrying on a trade or business or engaged in an activity for profit during the periods of time involved herein. OPINION The primary issue herein relates to the purpose of petitioners round-the-world trip on the Quest. Petitioners contend that they undertook the voyage in order to engage in writing and "chartering" activities from which they intended to make a profit and urge us to conclude those activities constituted a trade or business within the meaning of section 162(a) [4] with the result that the expenses of operating the Quest are fully deductible. Respondent asserts that petitioners set sail for personal reasons relating to their desire to change their family life-style and that their writing and chartering activities should be deemed "not engaged in for profit" within the meaning of section 183(c) with the deductions attributable to those activities limited accordingly. For the reasons *327 hereinafter set forth, we agree with respondent. An activity not engaged in for profit under section 183 is the other side of the coin of a trade or business under section 162. Section 183(c) defines an "activity not engaged in for profit" as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212." The legislative history indicates that Congress intended to codify the distinction between a business and a hobby drawn by case law. (H.Rept. 91-413 (Part 1), 71 (1969), 1969-3 C.B. 200, 245; S.Rept. 91-552, 103 (1969), 1969-3 C.B. 423, 489. The test of whether an individual is carrying on a trade or business for purposes of section 162 is whether his primary or dominant motive is to make a profit. Godfrey v. Commissioner,335 F.2d 82, 84 (6th Cir. 1964), affg. T.C. Memo 1963-1; Hirsch v. Commissioner,315 F.2d 731, 736 (9th Cir. 1963), affg. T.C. Memo 1961-256; *328 Jasionowski v. Commissioner,66 T.C. 312, 319 (1976). The taxpayer's expectation of profit need not be reasonable, but it must be a good faith expectation. Mercer v. Commissioner,376 F.2d 708 (9th Cir. 1967), revg. T.C. Memo. 1966-82; Hirsch v. Commissioner,supra; Stern v. United States, an unreported case ( C.D. Cal. 1971, 27 AFTR 2d 71-1148, 71-1 USTC par. 9375); Benz v. Commissioner,63 T.C. 375, 383 (1974). Whether petitioners had the requisite profit motive is a question of fact to be determined on the basis of the entire record. Jasionowski v. Commissioner,supra at 319. The regulations set forth the relevant factors, derived from prior case law, which are to be considered in determining the applicability of section 183. Jasionowski v. Commissioner,supra at 320; Benz v. Commissioner,supra.The regulations further provide that no one factor is conclusive and we do not reach our decision herein by merely counting the factors that support each party's position. Sec. 1.183-2(b), Income Tax Regs.
We recognize *329 there are some outward manifestations of a business in petitioners' activities. They kept careful records of their income and expenses, they discontinued film making when they found it was not profitable, and they devoted extensive time to their activities. Sec. 1.183-2(b)(1), Income Tax Regs.
But such indications of a business pale beside the considerable evidence that the genesis of the voyage was Charles' concern for the effect of his life-style on his health. His testimony left us with the distinct impression that his primary motive was to get away from the pressures of his law practice. He and Vann made a conscious decision to embrace a new way of life and the Quest was their instrument for implementing that decision. Petitioners attempt to establish their profit motive by stating they were compelled to supplement their income because their assets were insufficient to enable them to retire, but the record belies their claim. They appear to have had substantial assets and, indeed, by the time of trial they had been supporting themselves and their three children for six years with only negligible income from their claimed business activities. Further, if petitioners *330 were truly concerned about making a profit, we think they would have investigated the profit potential of their boat chartering and writing plans before embarking on their voyage. Sec. 1.183-2(b)(2), Income Tax Regs. Compare Jackson v. Commissioner,59 T.C. 312 (1972). The record contains no evidence of such an investigation and some of the responses from publishers suggest that the market may not have been very good for the type of books they were writing. Their claim of a profit motive in their chartering activities is also undermined by the evidence that paying passengers were carried only when it fit in with their planned itinerary. See Martin v. Commissioner,50 T.C. 341, 355-356 (1968). Cf. Rand v. Commissioner,34 T.C. 1146 (1960) (section 212). Nor are we impressed with their emphasis on their extensive preparation for the trip. While the marine courses they took may have been relevant to chartering, virtually all of their preparation was necessary to assure their own safety. We are also influenced by the fact that petitioners had owned boats and engaged in boating activities for recreation for many years prior to their *331 voyage around the world. This fact combined with their independent sources of income tends to indicate they were not motivated by profit. McGowan v. Commissioner,347 F.2d 728 (7th Cir. 1965), affg. T.C. Memo 1964-241; Benz v. Commissioner,63 T.C. at 385; Bessenyey v. Commissioner,45 T.C. 261, 274 (1965), affd. 379 F.2d 252 (2d Cir. 1967). Sec. 1.183-2(b)(9), Income Tax Regs.
Petitioners seek to draw sustenance from Wright v. Commissioner,31 T.C. 1264 (1959), affd. 274 F.2d 883 (6th Cir. 1960). That case held that the expenses of an attorney and his wife in taking a trip around the world, about which they wrote a manuscript of their experiences and impressions for publication, were not deductible as ordinary and necessary expenses of carrying on a trade or business. Petitioners seize upon a variety of distinctions between the facts in Wright and the facts herein to support their conclusion that Wright dictates a decision in their favor. But petitioners cannot, by a process of reverse English, elevate Wright to such precedential status. Wright simply *332 held that the taxpayers' trip had been motivated by personal, rather than business, reasons and that any profit motive attaching to their contemplated publishing activities was purely incidental. [5] Cf. Ballantine v. Commissioner,46 T.C. 272, 280 (1966). We are convinced that petitioners would have taken their voyage even if they had not planned to engage in chartering or writing activities and wether or not such activities produced a profit. In so stating, we recognize that petitioners would have been pleased to make a profit from such activities. We think, however, that at most these activities *333 represent an attempt to recoup some of the costs of the voyage and this is simply not enough to justify the conclusion that petitioners were engaged in an activity for profit. Martin v. Commissioner,supra.[6] Cf. Rand v. Commissioner,supra.We also note that any losses which petitioner could deduct would generate substantial tax benefits by reducing their liability on their other income. See sec. 1.182-2(b)(8), Income Tax Regs.
In sum, we conclude that petitioners' primary or dominant purpose was to get away from the pressures of their previous lives and that their contemplated chartering and writing activities were merely incidental to accomplishing that purpose. They cannot convert what were essentially personal expenses into business expenses simply by writing about their personal experiences. We are reinforced in our conclusion by the precedence accorded to the non-deductibility of personal expenses under section 262 over the provisions of section 162. *334 See Sharon v. Commissioner,66 T.C. 515, 522-523 (1976), and cases cited thereat (on appeal, 9th Cir., Dec. 20, 1976). Accordingly, we hold that petitioners' boat chartering and writing activities were not engaged in for profit and that the deduction of their expenses is governed by section 183. Under section 183(b), petitioners are entitled to deductions which are allowable without regard to whether an activity is engaged in for profit and to deductions which would be allowable if the activity were engaged in for profit. The latter deductions may not exceed the excess of gross income from such activity over the deductions allowed without regard to whether the activity is engaged in for profit. In 1973, respondent allowed petitioners to deduct their expenses of the voyage up to the amount of the income derived from their chartering and writing activities. In 1971 and 1972, he made an allocation which resulted in an allowance of such expenses in amounts less than petitioners' income from activities relating to their voyage. As the record shows, such allowance was based at least in part on the fact that petitioners had been unable to substantiate the actual *335 expenditure of a large portion of the amount deducted on their returns for those years. That defect was cured by an augmentation of the record through further stipulation of the parties after trial. We have carefully examined the augmented record and are satisfied that petitioners are entitled, under section 183, to deduct amounts equal to but not in excess of their income from their activities, to wit, $2,129.00 for 1971 and $933.00 for 1972. The final issue is whether petitioners are entitled to deduct tuition in the amount of $1,200 for the taxable year 1971. Respondent does not question the amount claimed and does not deny that the courses Vann took maintained and improved the skills required for teaching. The sole question before us is whether Vann was in the trade or business of being a teacher at the time she undertook the course of study in question. See sec. 1.162-5(a)(1), Income Tax Regs.
Respondent determined that petitioners were not entitled to the deduction on the ground that Vann had resigned her position as a teacher to take a voyage of indefinite length and was no longer engaged in the trade or business of teaching. Petitioners claim that she was still in *336 the trade or business of teaching because she sought substitute teaching jobs at every port and earned $94 from such jobs in 1971. Yet, the substance of Vann's own testimony was that she signed up as a substitute teacher in different countries for educational purposes and, thus, the requisite profit motive is lacking. See Godfrey v. Commissioner,supra; Hirsch v. Commissioner,supra; Bessenyey v. Commissioner,supra.[7]
Moreover, petitioners concede that they cut themselves off from their former careers completely and the record evinces no indication that *337 they intend to return to such careers. Even if Vann hoped to return to teaching at some point in the future, her plan was of such an indefinite nature that it cannot support the conclusion that she was carrying on a trade or business of being a teacher in 1971. Compare Wyatt v. Commissioner,56 T.C. 517 (1971), and Corbett v. Commissioner,55 T.C. 884 (1971), with Furner v. Commissioner,393 F.2d 292 (7th Cir. 1968), revg. 47 T.C. 165 (1966). Decision in docket No. 9515-74 will be entered under Rule 155.
Decision in docket No. 10470-75 will be entered for the respondent. Footnotes
1. The record is unclear as to the income from paying crew and charters as such, but, for the purposes of this case, we assume that income from both sources is considered income from "chartering".↩
2. The record indicates that petitioners had substantial wealth and that the cash flow therefrom was not only greater than the figures set forth in the table indicate (i.e., rental income reported was after depreciation) but also may well have had a substantially greater future potential.↩
3. We note that Vann's W-2 Forms attached to the 1971 tax return showed wages of $101.25 received from schools in Hawaii. However, the parties have stipulated that Vann earned $94.↩
4. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue.↩
5. Stern v. United States, an unreported case ( C.D. Cal. 1971, 27 AFTR 2d 71-1148, 71-1 USTC par. 9375), upon which petitioners also rely, is clearly distinguishable. There, the taxpayer was a resident of Los Angeles who incurred travel and lodging expenses in New York City in preparing a book. The court held the expenses were deductible under section 162(a)(2) since he was "away from home." Petitioners herein were not away from home, as Quest was their principal residence. See Hicks v. Commissioner,47 T.C. 71↩ (1966).
6. See also Lyon v. Commissioner,T.C. Memo. 1977-239; Savarona Ship Corp. v. Commissioner,↩ a Memorandum Opinion of this Court dated November 12, 1942.
7. Petitioners' attempt to embellish their argument by stating that Vann taught her own children on the yacht and by pointing out that she is writing a children's book. The teaching of one's own children is not an activity pursued with a profit motive and does not, by any stretch of the imagination, constitute a trade or business. As to writing children's books, petitioners have not shown such connection between Vann's course of study and her writing activities as would justify allowance of any part of the deduction under the limited conditions of section 183.↩